Dear Mr. Krysiak:
You have requested our opinion whether the Maryland Association of Boards of Education Workers' Compensation Group Self-Insurance Fund (the "Fund") was required to pay the 1995 annual assessment charged by the Workers' Compensation Commission pursuant to § 9-316 of the Labor and Employment ("LE") Article, Maryland Code. Specifically, you ask (1) whether the Fund was subject to the assessment under the law in effect in 1995; and (2) if not, whether a 1996 amendment to LE § 9-316 may be applied retroactively to permit collection of the assessment.
Our opinion is as follows:
1. The Fund was subject to the 1995 annual assessment under the law then in effect.
2. Even if the law then in effect were construed to have excluded the Fund from the obligation to pay the assessment, the 1996 amendment to LE § 9-316 may be applied retroactively to impose the 1995 assessment obligation on the Fund.
 I Self-Insured Entities and the Assessment Statute
Prior to 1980, former Article 101, § 16(3) permitted only individual employers to self-insure. Under former Article 101, § 17, all "insurance carriers" were required to pay an assessment to defray the operating costs of the Commission; included in the definition of "insurance carrier" was "any employer who is self-insured as allowed by subsection (3) of § 16." In other words, self-insurers were treated like any other insurer for assessment purposes.
Effective July 1, 1980, § 16(3) was amended to permit groups of employers to pool together and become self-insured. Chapter 773, Laws of Maryland 1980. Chapter 773 made no distinction between governmental and non-governmental employers. Rather, it referred simply to "groups of employers" that were permitted to "establish joint self-insurance coverage." Although § 17 was not amended to make explicit the inclusion of groups of self-insurers for assessment purposes, the reference in § 17 to those employers "self-insured as allowed by subsection (3) of § 16" automatically encompassed groups of employers who self-insured.
In 1981, § 16(3) was again amended, this time to limit self-insurance groups to governmental employers. Chapter 666, Laws of Maryland 1981. Again, § 17 was not amended; it simply retained its reference to "subsection (3) of § 16." Thus, although self-insured groups of governmental employers were not explicitly named in the assessment statute, the reference in § 17 to self-insurers under subsection (3) of § 16 was sufficient to impose the assessment obligation on these groups.
In 1986, § 16 was amended by the addition of a new subsection (4), which authorized private employers to pool together to self-insure. Chapter 715, Laws of Maryland 1986. The assessment statute, § 17, was not amended to reflect this change in the types of employers permitted to self-insure. Because § 17 referred only to "employers self-insured as allowed by subsection (3) of § 16," a literal interpretation of § 17 would have excused private employer self-insurance groups formed pursuant to subsection (4) of § 16 from paying the assessment. The failure to amend § 17 was very likely simply a drafting oversight, for neither the statute nor its legislative history indicated an intent to exclude private self-insurance groups from the assessment. The title to Chapter 715 reflected no such purpose. Indeed, there is no conceivable reason why the General Assembly would have decided to spare private employer groups from bearing their proportional share of the Commission's costs, when both single employer and government groups were required to pay. Because the preceding three amendments to § 16 had not required any change to § 17 to extend the assessment obligation to groups newly permitted to self-insure, the drafters evidently did not recognize that this time § 17 ought to have been amended as well.
In 1987, the General Assembly made two changes to the self-insurance provisions. First, in Chapter 466, it amended § 16(3) to allow various entities, including county boards of education, to be considered units of county government for purposes of self-insurance. Chapter 466 did not amend § 17.
Then, in Chapter 645, the General Assembly reorganized the self-insurance provisions. A new section, § 16A, set out the procedural requirements for a group of governmental employers to become self-insured. As revised, § 16 defined the different ways in which an employer could secure workers' compensation coverage, including the methods of self-insurance. The order of those definitions changed, however: Subsection (3) referred to those groups permitted to self-insure pursuant to Article 48A, Subtitle 44 — that is, private employers; a new subsection (4) referred to those groups permitted to self-insure pursuant to Article 101, § 16A — that is, governmental employers.
As had been the case when § 16 had been amended previously, no corresponding change was made to § 17. Because § 17 continued to refer to those employers self-insured "as allowed by subsection (3) of § 16," a literal interpretation of § 17 would have exempted from the assessment governmental employer groups that self-insured pursuant to subsection (4) of § 16. As was true of the previous changes, however, neither the bill title nor the legislative history reflects any intention to exclude any particular type of employer from the assessment. Once again, the failure to amend § 17 to reflect changes in § 16 was almost surely a drafting oversight. In fact, during the time that this discrepancy between § 16 and § 17 existed, from 1987 to 1991, the Fund continued to pay the assessments billed by the Commission, correctly perceiving that its obligation had not been removed despite the changes in the statutory text.
In 1991, the workers' compensation provisions of Article 101 were recodified into the Labor and Employment Article. Chapter 8, Laws of Maryland 1991. Former Article 101, § 16 became LE § 9-402, which as enacted read as follows:
 (a) [E]ach employer shall secure compensation for covered employees of the employer by:
 (1) maintaining insurance with the Injured Workers' Insurance Fund;
 (2) maintaining insurance with an authorized insurer;
 (3) participating in a governmental self-insurance group that meets the requirements of § 9-404 of this subtitle;
 (4) participating in a self-insurance group of private employers that meets the requirements of Article 48A, Subtitle 44 of the Code;
 (5) maintaining self-insurance for an individual employer in accordance with § 9-405 of this subtitle; or
 (6) having a county board of education secure compensation under § 8-401.1(c) of the Education Article.
The provision for governmental self-insurance groups, former Article 101, § 16A, became LE § 9-404. The assessment requirement, former Article 101, § 17, became LE § 9-316. That section required the Commission to "assess against and collect from each insurer a tax for the maintenance of the Commission." "Insurer" was defined under LE § 9-316(a)(3) as follows:
 (i) A stock corporation or mutual association that is authorized under Article 48A of the Code to provide workers' compensation insurance in the state;
(ii) The Injured Workers' Insurance Fund; or
 (iii) A self-insurance group authorized under § 9-404 of this title.
Because LE § 9-404 applied only to governmental self-insurance groups, this drafting, if construed literally, would have resulted in governmental employer self-insurance groups being subject to assessment, but other self-insured employers or group of employers being excluded. Again, the legislative history reveals no sign that the General Assembly intended this recodification to effect a substantive change with respect to the employers or groups of employers subject to assessment.
In an attempt to correct an "erroneous cross-reference," LE § 9-316 was amended in the 1992 corrective bill. Chapter 22, Laws of Maryland 1992. Instead of referring to self-insurance groups authorized under "§ 9-404 of this title," subsection (a)(3)(iii) was amended to refer to self-insurance groups authorized under "§ 9-402(4) of this title." Unfortunately, this new reference was itself erroneous, for the reference to "§ 9-402(4)" did not accurately identify any provision in LE § 9-402. This legislation made no substantive change, and the Fund continued to pay its annual assessment after this amendment.
Through the annual corrective bill in 1995, the erroneous cross-reference in LE § 9-316(a)(3)(iii) was changed. Chapter 3, Laws of Maryland 1995. Effective March 7, 1995, amended LE § 9-316
required the Commission to impose an assessment on "self-insurance group[s] organized under § 9-402(a)(4)." Taken literally, the amended assessment statute appeared to apply only to "a self-insurance group of private employers," not to governmental self-insurance groups. Nothing in the bill title or the legislative history, however, suggests that a substantive change, excluding governmental self-insurance groups from assessment, was intended. In fact, because the amendment was a part of the annual corrective bill, the evidence is exactly to the contrary.
On October 31, 1995, the Commission sent a bill for the annual assessment to the Fund. By letter dated November 29, 1995, the Fund Administrator informed the Commission that, because LE § 9-316 referred only to those groups organized under § 9-402(a)(2), the Fund believed that it was not subject to the assessment. Acting on its view of the statute, the Fund has not paid the assessment billed in October 1995.
Shortly after receiving the November 29, 1995, letter from the Fund, the Commission sought and obtained an amendment to LE § 9-316 to correct the improper cross-reference. Enacted as Chapter 38 (House Bill 149) of the Laws of Maryland 1996 and effective October 1, 1996, current LE § 9-316(a)(3) defines "insurer" as follows:
 (i) a stock corporation or mutual association that is authorized under Article 48A of the Code to provide workers' compensation insurance int his State;
(ii) the Injured Workers' Insurance Fund;
 (iii) a governmental self-insurance group that meets the requirements of § 9-404 of this title;
 (iv) a self-insurance group of private employers that meets the requirements of Article 48A, Subtitle 44 of the Code; or
 (v) an individual employer that self-insures in accordance with § 9-405 of this Title.
 II
Applicability of the Assessment Statute to the Fund's 1995 Assessment
Your initial question is whether the Fund is liable for the October 1995 assessment bill, given the language of the assessment statute at that time. From March 27, 1995 through October 1, 1996, the assessment statute defined an "insurer" subject to assessment as a stock or mutual association or corporation authorized under Article 48A, which applied only to private insurance companies; the Injured Workers' Insurance Fund; and self-insurance groups organized under § 9-404(a)(4), which applied only to private self-insurance groups. If the statutory text were read literally, the result is that the Fund and other governmental self-insurance groups were not subject to assessment. In our opinion, however, a literal construction would improperly ratify the unintended result of a series of drafting errors.
"When construing a statute, our governing principle must be the Legislature's intent because . . . the cardinal rule in statutory construction is to effectuate the Legislature's broad goal or purpose." Armstead v. State, 342 Md. 38, 56, 673 A.2d 221
(1996). In applying this "governing principle," we look to "external manifestations of legislative intent . . . such as the amendment history of the statute, its relationship to prior and subsequent law, and its structure." Id.
The purpose of the assessment provision is to require those who use the services of the Workers' Compensation Commission to absorb the cost of maintaining the system. This purpose is apparent from the method by which the insurers' assessments are calculated. First, the Commission must determine the amount of the appropriation for the Commission's expenses for the fiscal year, adjusted by the amount of shortfall or excess from the previous fiscal year; the result is an approximation of the Commission's actual expenses for the fiscal year. Then the Commission must calculate the total payroll of all insurers and determine for each insurer the percentage of total payroll that the insurer's payroll represents. Using that percentage, the Commission calculates an insurer's assessment as its pro rata portion of the approximated Commission expenditures for that fiscal year. See LE § 9-316(d). Because total assessments equal the total estimated expenses, those who use the Commission's services pay in full for the availability of those services.
It is most unlikely that the General Assembly ever intended to create a category of free riders, who would benefit from the Commission's services without paying their share of the costs. Certainly, no legislative history articulates so counter-intuitive an objective. In our opinion, the seemingly endless series of drafting mishaps never altered the General Assembly's true purpose, reflected in the original enactment: to make all those who use the Commission's services financially responsible for the Commission's expenses. "We shall not permit a patent drafting error to frustrate [the legislative] goal . . . ." Kaczorowski v.Mayor and City Council, 309 Md. 505, 520, 525 A.2d 628 (1987).See also QC Corp. v. MPA, 68 Md. App. 181, 189-92, 510 A.2d 1101
(1986), reversed in part on other grounds, 310 Md. 379,529 A.2d 829 (1987). In our opinion, the Fund was always subject to assessment, just like any other employer group.
In any event, the erroneous cross-reference in the 1995 version of LE § 9-316 was corrected by the passage of House Bill 149 during the 1996 session of the General Assembly. We believe that this legislation should be applied retroactively to correct any misapprehension that the Fund was not liable for the 1995 assessment.
Determining whether an enactment may be applied retroactively involves a three-part analysis. First, the General Assembly must intend the law to apply retroactively. Second, a law may be applied retroactively only if the enacting body would have had the authority to pass the legislation in the past. Finally, a law may not be applied retroactively if doing so would interfere with vested rights. See Waters Landing Lim. Partnership v. MontgomeryCounty, 337 Md. 15, 28-29, 650 A.2d 712 (1994). Application of this three-step process to the 1996 amendment to LE § 9-316 leads us to the conclusion that the amendment may and should be applied retroactively.
The little legislative history for House Bill 149 suggests that the legislation was intended to be curative, and therefore retroactive, in nature. The Commission sought to have the amendment to LE § 9-316 placed in the annual corrective bill, and the Department of Legislative Reference agreed to do so. When the Fund informed the Director of Legislative Reference, F. Carvel Payne, of the Fund's intention to oppose the amendment, however, Mr. Payne, with the agreement of the Commission, placed the amendment in a separate bill. Mr. Payne explained that an item is not placed in the annual corrective bill if there is opposition to it; this practice ensures smooth passage of the annual corrective bill. The House Economic Matters Committee, which considered the bill, heard the Commission's explanation of the need for the correction to the assessment statute as well as the initial opposition from the Fund, which later withdrew its opposition. The bill passed virtually unanimously.[1] This legislative history, while scant, supports the conclusion that the 1996 amendment to LE § 9-316 was intended by the General Assembly to be curative and, therefore, retroactive.[2] See County Councilfor Prince George's County v. Carl M. Freeman Assoc., 281 Md. 70,79, 376 A.2d 860 (1977) (curative legislation is generally retroactive in effect); QC Corp. v. MPA, 68 Md. App. at 194
(giving retroactive effect to statute intended to make "transpicuous the unchanged legislative intent"). The General Assembly never intended governmental self-insurance groups to be exempt from assessment, and House Bill 149 corrected the technical error that had suggested this unintended result.
Because there is no question that the General Assembly could have passed the amendment to LE § 9-316 in 1995, the sole issue remaining is whether retroactive application of the 1996 amendment results in an interference with vested rights. If a statute or amendment to a statute results in a clear change in legislative policy, vested rights may become impaired. Waters Landing,337 Md. at 29. Further, vested rights are more likely to become impaired when retroactive application of a statute or amendment results in substantial injustice or gives rise to unanticipated obligations. Id. On the other hand, if the statute or amendment merely corrects an inadvertent lack of authority and is minor in nature, the enactment will not likely impair vested rights. Id.
In this instance, the amendment to LE § 9-316 did not change legislative policy; rather, as explained above, the amendment brought the text of LE § 9-316 into conformity with legislative policy. Further, the retroactive application of the 1996 amendment to LE § 9-316 to the Fund will not work a substantial hardship nor result in the Fund paying an unexpected obligation. Since its creation, the Fund has paid the assessment billed by the Commission, and the Commission's services have been made available to the Fund and its members' employees. At no time did the Commission suspend the provision of services to the Fund; the Fund had no reasonable expectation of an exemption from the assessment. In fact, it would work an injustice to the Commission and to those insurers who paid their assessments if the Fund, to whom Commission services remained available, was not required to pay its fair share of the Commission's expenses. Finally, the 1996 amendment to LE § 9-316 was intended to correct the inadvertent error that resulted in the statutory text failing to reflect left the Commission's authority to assess a maintenance fee to the Fund; the correction was thus minor in nature. Therefore, retroactive application of House Bill 149 will not impair any vested rights of the Fund.
 III Conclusion
In summary, it is our opinion that the Workers' Compensation Commission had the authority to impose the 1995 assessment on the Fund and has the authority now to require payment of the assessment.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Jack Schwartz Chief Counsel Opinions and Advice
 Kathleen Hoke Dachille Assistant Attorney General
[1] The bill passed in the House by a vote of 133 to 1 and in the Senate by a vote of 46 to 0.
[2] The Fund has suggested that a Senate bill containing the same amendment as House Bill 149 was explicitly retroactive and that the failure of the Senate bill indicates that House Bill 149 was not intended to be retroactive. That a Senate bill containing an explicit reference to the retroactivity of the amendment failed provides no insight into the retroactivity of the House bill that was ultimately enacted. The mere failure of one bill is no basis for construing a bill that did pass. SeeGoldstein v. State, 339 Md. 563, 569-70, 664 A.2d 375 (1995) (citing Automobile Trade Ass'n v. Insurance Comm'r, 292 Md. 15,24, 437 A.2d 199 (1981)).
 *Page 3