21 A.3d 1065

COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY,
Maryland, Sitting as the District Council, et al.

v.

Dedra BILLINGS, et al.

No. 46, Sept. Term, 2010.

Court of Appeals of Maryland.

June 20, 2011.

86

■■■■■■■■

■■■■■■■■

Steven M. Gilbert, Principal Counsel (Office of County Council, Upper Marlboro, MD), on brief, for Petitioners.

Matthew C. Tedesco (Daniel F. Lynch of Knight, Manzi, Nussbaum & LaPlaca, P.A., Upper Marlboro, MD), on brief, for Petitioners.

Michael M. Hethmon, Upper Marlboro, MD, for Respondents.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

ADKINS, J.

In this case, we must consider an administrative appeals board's practice of "withdrawing an election to review." The District Council of Prince George's County may, on its own initiative, "elect to review" certain local land use decisions. In practice, the Council sometimes, after electing to review a decision, "withdraws" its election and declares final the agency decisions. By doing so, the Council is essentially *deciding not to decide*. We must consider the legality of this practice, and how a party to the now finalized agency decisions must exhaust their remedies and preserve their right to judicial review.

The project at issue is the proposed expansion of a gas station, which required two local zoning approvals. The developer, Eastern Petroleum Company ("EPC"), sought the necessary approvals from the appropriate local agencies, which each held public hearings. The Respondents, a group of nearby residents [1] (the "Citizens"), were wary of the proposed expan-

---

1. The original petitioners included Friends of Croom (a civic organization), Dedra Billings, David Johnson, Cheryl Corson, and Michelle Coffee.

sion, and appeared in opposition at the agency level. After the hearings, the local agencies granted both zoning approvals.

Before any action from the Citizens, the District Council of Prince George's County "elected to review" each of the zoning decisions, as allowed for by the county code. The Citizens did not file written exceptions to the agencies' decisions with the District Council, apparently waiting to contest the decisions at the public hearing for the "election to review." Before any review proceedings, the District Council withdrew its election to review the local decisions, and declared the agency decisions "final."

The Citizens filed an action for judicial review of the District Council's "decision" in the Circuit Court of Prince George's County. The Circuit Court dismissed the judicial review action, reasoning that the withdrawal was not a final decision. On appeal, the Court of Special Appeals concluded that the withdrawal was a final decision and reversed the Circuit Court. The intermediate appellate court then held that the District Council was not permitted, by the procedures in the Prince George's County Zoning Ordinance,[2] to withdraw its election to appeal, and ordered the case remanded to the District Council. Both the developer and the District Council requested *certiorari* from this Court, which we granted to review the following questions, rephrased for brevity and clarity:

1) Were the Citizens "eligible" to seek judicial review of the Council's decision, when the issues they raised on appeal were not raised at the agency level?

2) Did the Citizens fail to exhaust their administrative remedies by failing to present evidence at the agency level and failing to file exceptions to the administrative decisions or an appeal to the District Council?

---

**2.** Unless otherwise specified, statutory citations in this opinion refer to Prince George's County Code, Section 27, which contains the relevant zoning ordinances.

3) Did the Court of Special Appeals err in holding that once the District Council elects to review a decision, it may not withdraw that election and must hold a hearing on the merits and adopt written findings and conclusions? [3]

We shall hold that the Citizens are eligible to seek review of the Council decision, and that they did not fail to exhaust their administrative remedies. Furthermore, we shall affirm the Court of Special Appeals' holding that the District Council may not withdraw its election to review a local zoning decision.

## FACTS AND LEGAL PROCEEDINGS

The EPC owns and operates a gas station located on Crain Highway in Prince George's County. In 2007, EPC sought to improve the gas station by razing its current convenience store, along with two vacant buildings on the lot, and adding a larger convenience store and a drive-through car wash. [4] To accomplish this task according to its design plan, EPC required two administrative approvals.

First, the project required a Departure from Design Standards. [5] A Departure from Design Standards request is han-

---

3. We also granted *certiorari* on the issue, raised by Petitioners, as to whether the District Council's withdrawals were "final decisions." At oral argument the counsel for the District Council "concede[d], for the purposes of the case, that the Council's vote to withdraw their election to review is a 'final decision[.]' " Similarly, counsel for EPC stated at argument that "[w]hether it's a final decision or not is really indifferent [sic] to us." Independent of the parties' viewpoints, we are satisfied that the "withdrawal" was a final decision, as it "denie[d] the parties means of further prosecuting or defending their rights[,] . . . leaving nothing further for the agency to do." *Maryland Comm'n on Human Relations v. Baltimore Gas & Electric Co.*, 296 Md. 46, 56, 459 A.2d 205, 211 (1983).

4. The original plan also included a fast-food restaurant, the location of which on the lot failed to comply with a 200-foot setback requirement. EPC withdrew this aspect of the proposal on May 3, 2007.

5. EPC's plan included an access drive which was located within twenty-nine feet of the eastern property line, on the other side of which lay residentially-zoned land. This violated PG Code § 27–579(b), which states that "no vehicular entrances to any loading space (including

dled by the Prince George's County Planning Board or Planning Director. PG Code § 27–239.01.[6] The Planning Board considered EPC's Departure from Design Standards request ("DDS 564") in public hearings on April 5, 2007 and May 3, 2007. At these hearings, three of the Citizens appeared in opposition at the Planning Board's hearing on DDS 564: David Johnson, Cheryl Corson, and Dedra Billings. Johnson summarized his opposition to the expansion as follows:

> This is taking a nonconforming use and expanding it five times in perhaps the worst spot you can imagine.... [Y]ou're putting a much expanded gas station and a carwash and a C-store ... between a highway which[,] as you've already heard, is extremely dangerous and between a [branch of the Charles River] which the Maryland National Capital Parks and Planning has been trying to protect for years.

Corson focused on safety issues:

> Even with the current configuration of the station, this is a very dangerous short stretch of Route 301....
>
> Cars heading north on Route 301 from the [ ] area usually are traveling well over the speed limit when the traffic light is green, plus given the topography they are traveling down a long hill right toward the BP Station area. With the added complication of cars exiting the BP Station, this can be extremely dangerous with the current conditions.
>
> * * *
>
> When there is an emergency, fire vehicles need the safest route of travel through the intersection[.] Do we need to make this intersection any more dangerous than it already

---

driveways and doorways), shall be located within fifty (50) feet of any Residential Zone," thus requiring a Departure from Design Standards ("DDS"). EPC's request, DDS 564, sought a departure of 21 feet, DDS 564, so as to allow the vehicular entrance.

**6.** To grant a DDS, the Planning Board must make four statutorily-imposed findings, including that "[t]he departure will not impair the visual, functional, or environmental quality or integrity of the site or of the surrounding neighborhood." PG Code § 27–239.01(b)(7)(a).

is? Only months ago a T.V. journalist was killed at exactly this spot on Route 301[.]

* * *

Please do not allow the proposed expansion of the BP Station, and I will concur with my neighbors and friends, I have no trouble with modernizing the existing facility.

In Billings' statement at the hearing, she touched on a number of issues:

[T]here appears to be no plans for adding to or increasing the length of a deceleration lane for northbound Route [301] traffic. . . . [There is] an additional traffic safety issue with drivers coming north on Route 301 because they will be coming around a blind curve and down a hill and to a traffic light. As far as I know there is currently no deceleration lane for people to [enter into] BP. So you're going to have people stopping quickly, making a decision to enter BP, and I can only foresee more accidents.

* * *

We're really happy that the applicant is considering ways to mitigate street runoff. . . . But simply adding this runoff to a stormwater retention pond[,] as the applicant proposes, does not make it the best solution for site drainage. Funneling all the runoff from the road and the gas station raises the issues of whether problems that arise later on may well go unmonitored and uncorrected and scaling back it's overly intense proposed use of the site would also certainly leave enough room for a better stormwater management system within the confines of the commercial property itself.

* * *

And we want them to incorporate elements of the rustic vernacular architecture that are in the rural tier now.

* * *

[In conclusion,] [w]e support, among other things, minimizing traffic hazards and congestion, protecting the environment, reducing light pollution and the avoidance of urban [architecture] at the entrance to the rural tier.

Nonetheless, the Planning Board approved the request, as proposed, on May 31, 2007, issuing a written Resolution on June 5, 2007. The notice for DDS 564 included the following passage:

The [agency's] decision will become final ... (31 days after the date of this letter) unless:

1. Prior to this date, a written appeal is filed with the District Council for Prince George's County by any person of record; or

2. Prior to this date, the District Council decides on its own motion, to review the [administrative] decision.

EPC's project also required a Special Exception.[7] A Special Exception Request is decided by a Prince George's County Zoning Hearing Examiner ("ZHE").[8] *See* PG Code § 27–312. The ZHE held a hearing for EPC's request for Special Exception ("SE 4549") on May 2, 2007, where Respondent Billings appeared in opposition. Billings expressed concern over whether EPC's expansion would be consistent with the character of the neighborhood:

[O]ne of the issues we always had was that we thought [the proposed design] is not really appropriate or this type of architecture is not as appropriate for a rural area[,] which we still technically are, and it's more appropriate for a suburban or urban location.

One of the issues that we had been bringing up—we were very happy to see about the green flat roof. We had been looking at and suggesting something along the lines of[,]

---

7. The land on which EPC's lot is located is zoned as a Commercial Shopping Center ("C–S–C"). In a C–S–C zone, a gas station is not allowed by right, but only by special exception. The original gas station was approved as a "non-conforming use" in 1987, but the proposed expansion required further approval. Eastern Petroleum thus sought a Special Exception ("SE 4549") for the proposed gas station expansion with the Office of the Zoning Hearing Examiner.

8. The request must comply with specific requirements for gas stations, PG Code § 27–358, as well as the following series of six general requirements for Special Exceptions, PG Code § 27–317.

say[,] a more rustic barn-type siding and maybe a false roof in front of it with a porch that comes down[.]

\* \* \*

What I would like to see ... is the indigenous architecture, the rural heritage[,] and some of those types of things reflected because one of the issues that we have in terms of development on the east side of Route 301—it's the gateway into the rural tier.

Later in the hearing, Ms. Billings summarized her positions as follows:

[W]e are not objecting to most of the things that they're trying to do and even though I had to write that I was in opposition—most of the issues that we're concerned with are not the operation of the business. It has to do with environmental, pollution, traffic safety, lighting ... and the architectural issues have not been addressed as well.

The ZHE, however, approved the request on September 4, 2007. The ZHE's notice for SE 4549 contained the following passage:

The Zoning Hearing Examiner's decision shall become final 30 calendar days after the above filing date unless:

(1) Written appeal within 30 days of the above date is filed with the District Council by any person of record[;] or

(2) The District Council directs this case be transmitted to the Council for final disposition by the Council.

Thus, after each agency approval, the parties were advised of three possibilities: (1) a party could file a written appeal with the District Council, (2) the District Council could elect to review the approval, or (3) the approval could become final if neither a party nor the Council took any action.

With regard to both DDS 564 and SE 4549, the District Council elected to review the agency approval before any action by the Citizens.[9] The paths of the DDS and SE

---

9. The parties were notified of the DDS 564 approval on June 5, 2007, meaning that any written appeal would have to be filed before June 5,

requests thus coincided and appeared to be headed for the District Council review. That review, however, never took place; in letters dated October 31, 2007, the Council notified all parties of record, in both DDS 564 and SE 4549, that it was withdrawing the election to make a final decision, and that the original, agency decisions were then final.

The Citizens petitioned the Circuit Court for judicial review of the District Council's decisions on November 30, 2007, naming the Council as the Respondent. The District Council filed a motion to dismiss, arguing that (1) the District Court took no "action" at all, and thus its withdrawal of election to review the decisions was not a "final action," and (2) that the Citizens had failed to exhaust their administrative remedies. EPC followed with its own motion to dismiss, on similar grounds. After a hearing, the Circuit Court dismissed the Citizens' petition.

On appeal, the Court of Special Appeals ("CSA") disagreed with the Circuit Court, and held that the withdrawal of election to review was a final decision, and that the administrative exhaustion requirement did not preclude the Citizen's claim. The CSA also discussed the Council's practice of withdrawing its elections to review, and, after examining the relevant statutes, held that the Council was *not permitted to withdraw* its elections. The CSA thus ordered the case remanded to the District Council, with direction to the Council that they resume review of the agency decisions.

## DISCUSSION

In this court, the Petitioners have alleged two deficiencies with the Respondent's action for judicial review: (1) that the

2007. On June 18, 2007, before any action from the Citizens, the District Council elected to review that decision, and notified the parties on June 21, 2007.

On September 4, 2007, the parties were also notified of the SE 4549 approval. Before the Citizens filed a written appeal, the District Council elected to review that decision on September 24, 2007, providing notice to the parties on September 28, 2007.

Citizens are not "eligible" to seek judicial review and (2) that the Citizens failed to exhaust their administrative remedies. We shall address these claims before reaching the issue on which the CSA decided the case, *i.e.,* whether the District Council may withdraw its election to review an agency decision.

## I. "Eligibility" to initiate a judicial review action.

The Council argues, as a preliminary issue, that the Citizens were not "eligible" to seek judicial review of the District Council's decisions to withdrawal review of the two agency decisions. While not cast as such, Council's argument sounds like a "standing" argument, as the Petitioners question "how the [C]itizens obtained rights to attack [the District Council's] decisions."

The right to challenge agency zoning decisions in Prince George's County is governed by the Regional District Act. *See* Maryland Code (1957, 2003 Repl.Vol.), Article 28, §§ 7–101 *et seq.* As we recently described in *Prince George's County v. Ray's Used Cars,* 398 Md. 632, 635–36, 922 A.2d 495, 497 (2007):

The Maryland General Assembly, by the Regional District Act, delegated zoning power for most of Prince George's County to the Prince George's County District Council. Pursuant to § 8–101(2) of the Act, the District Council "may by ordinance adopt and amend the text of the zoning ordinance and may by resolution or ordinance adopt and amend the map or maps accompanying the zoning ordinance text to regulate, in the portion of the regional district lying within its county ... (ii) the size of lots, yards, courts and other open spaces...." The Regional District Act also creates the Prince George's County Board of Zoning Appeals (§ 8–107), provides for the Board of Zoning Appeals to extend or continue "nonconforming uses" (§§ 8–108 and 8–109), and authorizes the Board of Zoning Appeals to grant "special exceptions and variances to the provisions of the zoning regulations." (§§ 8–110 and 8–111).

(Some citations omitted). Besides empowering local bodies with decision-making power, the Regional District Act also established judicial procedure for contesting local decisions, and established criteria for standing of potential litigants:

> In Prince George's County, any incorporated municipality located in Prince George's County, **any person or taxpayer in Prince George's County, any civic or homeowners association representing property owners affected by a final district council decision, and, if aggrieved, the applicant may have judicial review of any final decision of the district council.** Proceedings for review shall be instituted by filing a petition in the Circuit Court of Prince George's County within 30 days after service of the final decision of the district council[.]

Art. 28, § 8–106(e) (emphasis added).[10]

■ The Citizens certainly meet these non-demanding standing requirements. They are taxpayers of Prince George's County,[11] and at least one of the Citizens has participated at each administrative hearing.[12]

---

**10.** Under Maryland administrative law, and absent a controlling statute, a person must show two things to have standing to seek judicial review—that he was "a party to the administrative proceedings and [that he is] 'aggrieved' by the final decision of the agency." *Medical Waste Assocs., Inc. v. Maryland Waste Coal., Inc.*, 327 Md. 596, 611, 612 A.2d 241, 248 (1992). The parties to the administrative proceedings include "anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered[.]" *Id.* at 611, 612 A.2d at 249. Accordingly, the "requirements for administrative standing under Maryland law are not very strict." *Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 286, 686 A.2d 605, 613 (1996).

**11.** In addition, the Friends of Croom—one of the named Respondents—is a "civic or homeowners association representing property owners[.]"

**12.** "It is a settled principle of Maryland law that, 'where there exists a party having standing to bring an action ... we shall not ordinarily inquire as to whether another party on the same side also has standing.'" *Sugarloaf*, 344 Md. at 297, 686 A.2d at 618 (*quoting People's Counsel v. Crown Development*, 328 Md. 303, 317, 614 A.2d 553, 559–560 (1992)).

■ Moreover, "[i]n actions for judicial review of administrative land use decisions, 'an adjoining, confronting or nearby property owner is deemed, *prima facie,* . . . a person aggrieved.' " *Sugarloaf Citizens' Ass'n v. Dep't of Env't,* 344 Md. 271, 297, 686 A.2d 605, 618 (1996) (*quoting Bryniarski v. Montgomery Co.,* 247 Md. 137, 145, 230 A.2d 289, 294 (1967)). The Citizens, as nearby property owners, are *prima facie* "aggrieved." The Petitioners do not attempt to rebut this presumption. Instead, the Petitioners argue that the Resident's "expansion" of their arguments, from the limited issues raised at the agency level to the fourteen points raised in their Petition for Judicial Review, render them "ineligible" to bring a judicial review action:

> . . . Ms. Billings objected only to the architectural features on the new buildings, not the gas station or car wash operations themselves.

* * *

> [The Citizens' testimony] demonstrated concerns-but not proofs. . . . The [C]itizens proved nothing, submitted no evidence, and did not even advise . . . that they had substantial opposition to either of [EPC's] applications. [The Citizens'] lengthy [Circuit Court] memorandum . . . is very much at odds with the brief oral submissions they made [at the agency level].

The Petitioners' claims regarding the "expansion" of the Citizens' arguments do not affect whether the Citizens may *bring* a judicial review action, only what they may *argue* in such an action. *Cf. Sugarloaf,* 344 Md. at 294–96, 686 A.2d at 617 ("In cases involving challenges to administrative land use decisions, there is a distinction between standing in court to obtain review of the governmental action and the merits of the challenger's position. . . . 'Because the result on the merits might be adverse . . . does not mean that the protestant would not have status to challenge the board's action.' ") (*quoting Bryniarski,* 247 Md. at 145–46, 230 A.2d at 295).

## II. Exhaustion of Administrative Remedies

■ The Petitioners' main argument in this Court is that the Citizens' failure to file a written appeal with the District Council was a failure to exhaust their administrative remedies requiring dismissal.[13] As a prerequisite to judicial review, we generally require that parties pursue and complete all administrative avenues of relief which the legislature has provided. *See Maryland Reclamation Assocs. v. Harford County*, 342 Md. 476, 490–491, 677 A.2d 567, 574–575 (1996) ("MRA II"); *see also Josephson v. City of Annapolis*, 353 Md. 667, 675, 677, 728 A.2d 690, 694, 695 (1998) ("[T]he administrative remedy is intended to be primary" even where the Legislature has not "specifi[ed] that the administrative remedy is primary or exclusive[.]"). This "agencies first" rule promotes judicial efficiency and protects the exercise of agency discretion. *See Soley v. State Comm'n on Human Relations*, 277 Md. 521, 526, 356 A.2d 254, 257 (1976) ("The decisions of an administrative agency are often of a discretionary nature, and frequently require an expertise which the agency can bring to bear in sifting the information presented to it.").

■ The decision not to file an administrative appeal may be fatal to judicial review, especially when administrative deadlines have lapsed. *See Public Service Comm'n. v. Wilson*, 389 Md. 27, 882 A.2d 849 (2005). In *Wilson*, an employee of the Public Service Commission ("PSC") was fired. By statute, an employee of the PSC could file "a written appeal of a disciplinary action with the head of the principal unit … within 15 days after the employee receives notice[,]" and "on the grounds that the disciplinary action is illegal or unconstitutional." Md.Code (1993, 2004 Repl.Vol.), § 11–113(b) of the State Personnel and Pensions Article. Wilson did not file an administrative appeal, "opting instead to file in the pending court action[.]" *Wilson*, 389 Md. at 93, 882 A.2d at 887. The

---

13. As part of the District Council's "exhaustion" argument, it again addresses the Citizens' "change of position[ ] from administrative proceedings to trial court." This alleged "expansion" is not relevant to an exhaustion analysis.

Court held that, because she "allowed the relevant time period to expire without following the statutory directive under § 11–113[,]" she failed to satisfy the exhaustion requirement and was unable to "seek alternative redress in the Circuit Court[.]" *Id.See also State Ret. & Pension Sys. of Md. v. Thompson,* 368 Md. 53, 792 A.2d 277, (2002) (dismissing mandamus action against State Retirement and Pension system because of retiree's failure to request an administrative hearing); *Brown v. Fire & Police Emples. Ret. Sys.,* 375 Md. 661, 826 A.2d 525 (2003) (dismissing action for declaratory relief against Retirement System because plaintiffs failed to first seek an administrative hearing).

As in the above cited cases, the Citizens had a statutory right to District Council review, provided that they file written exceptions within thirty days of the agency decisions. The road to judicial review, therefore, had to run through the District Council. If the Citizens' failure to file written exceptions had prevented the agency decisions from ever reaching the District Council, their inaction would be a failure to exhaust administrative remedies and they would be foreclosed from judicial review.

 But this is not exactly what happened. The exhaustion question is complicated by the District Council's ability to "elect to review" a decision on its own. When the District Council elects to review an agency decision, review at that level proceeds even though no party of record has exercised their right to *force* an appeal. Importantly, the notice provided to the parties identified this potential Council action as an alternative to filing an appeal and written exceptions:

The [administrative] decision will become final ... (31 days after the date of this letter) **unless:**

1. Prior to this date, a written appeal is filed with the District Council for Prince George's County by any person of record; **or**

2. Prior to this date, the District Council decides on its own motion, to review the [administrative] decision.

(Emphasis added). The question we must consider, then, is whether our exhaustion principles require a party of record to file written exceptions *after* the District Council has elected to review the decision.

■■ Generally, when an administrative appeal proceeds without action by the parties of record, they are not required to take advantage of every opportunity to file their objections before a hearing. Instead, they may present their arguments at the public hearing, with no prior written record of their objections. Prince George's County zoning procedures demonstrate this principle. We have previously discussed the procedure for an application for a map amendment to Prince George's County "comprehensive design zones." *See Colao v. County Council,* 346 Md. 342, 697 A.2d 96 (1997). Like the application for a special exception, a map amendment application is first considered by the Planning Board before going to the Zoning Hearing Examiner.

> Before any decision by the Zoning Hearing Examiner, the Planning Board holds its own hearing on the application. § 27–191. The hearing, which is open to the public, may not be held until at least 30 days after the Technical Staff Report is received, and all persons who made a written request for the Technical Staff Report are notified of the hearing date. **Prior to the hearing, the applicant and any other person may submit written responses to the Technical Staff Report.** At the conclusion of the hearing, the Planning Board, by resolution adopted at a public meeting, makes its recommendation on the application. § 27–192.

*Id.* at 348, 697 A.2d at 99. According to this procedure, a party of record has an option to file, in effect, "exceptions" to the Technical Staff Report. But failing to take advantage of this opportunity is not a *failure to exhaust administrative remedies;* rather, a party of record may present its arguments in the later hearing conducted by the Zoning Hearing Examiner. *See* PG Code §§ 27–127 and 27–129.

■ Moreover, in the administrative zoning context, there is a low minimum threshold of required action for a

party to protect her review rights. At the initial agency level, that party need only attend the hearing, and then be "aggrieved" by the eventual decision:

> "Bearing in mind that the format for proceedings before administrative agencies is intentionally designed to be informal so as to encourage citizen participation, we think that absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered by that agency, thereby becomes a party to the proceedings."

*Sugarloaf,* 344 Md. at 286–87, 686 A.2d at 613. Assuming the district council review step did not exist, the neighbors would have effectively "exhausted" their administrative remedies by quietly entering the hearing and signing on as a party of record.

When the District Council elects to review a decision, the filing of exceptions no longer is necessary to guarantee review at the next administrative level. Nothing in the statute or the Council's communications suggested to the Citizens that they would have to file exceptions after the Council's election to review the decision. Indeed, the Council's own notices presented the filing of written exceptions as *an alternative* to the grant of an election to review. Any citizen would be reasonable in interpreting the District Court's election to review the matter as relieving the citizen of any obligation to file a written appeal.

To conclude otherwise would create a very real risk that an otherwise diligent party could be tripped up. As the Court of Special Appeals observed, "there is a great potential that interested parties could be lulled into a belief that a contemplated appeal was not needed inasmuch as the District Council had elected to decide the matter." *Billings v. County Council of Prince George's County,* 190 Md.App. 649, 658, 989 A.2d 1170, 1175 (2010).

To be sure, a party to a zoning action who fails to file a written appeal, and hedges its bets on the Council's election to review the decision, runs the risk that the Council will not exercise that power. In that instance, judicial review of the agency decisions could be foreclosed for failure to take advantage of the right to appeal. Once the District Court grants that review, however, our exhaustion requirement *does not* mandate that a party file a separate, redundant request for appeal. We hold, therefore, that the Citizens were not required to file a separate request for appeal in the District Council after the District Council had, itself, elected to review the decisions.

**III. Whether the District Council may, after "electing to review" an agency decision, withdraw that election.**

 We shall next examine whether the District Council has the right to withdraw its election to review this case. As we have previously stated:

[A]n agency of the government generally must observe rules, regulations or procedures which it has established and under certain circumstances when it fails to do so, its actions will be vacated and the matter remanded. This [rule] is consistent with Maryland's body of administrative law, which generally holds that an agency should not violate its own rules and regulations.

*Pollock v. Patuxent Inst. Bd. of Review,* 374 Md. 463, 503, 823 A.2d 626, 650 (2003). The applicable procedure differs for DDS and SE applications, so we will address each statutory scheme in turn.

*A. The Procedure for Departure for Design Standards Requests*

 The statute governing a Departure from Design Standards request allows for such a request to arrive in the District Council in two ways:

The Planning Board's decision may be appealed to the District Council upon petition of any person of record

[within thirty days]. The District Council may vote to review the Planning Board's decision on its own motion within thirty (30) days after the date of the notice.

PG Code § 27–239.01(b)(9). Here, the review was triggered by the District Council's own motion.

Once it elects to review a DDS decision, the governing statutes provide review procedures, and the Council may "based on the record, approve, approve with conditions, remand, or deny the application." PG Code § 27–132(f)(2). Perhaps more importantly, the local code imposes a mandatory procedure after the discretionary election to review an agency decision:

(C) The District Council shall schedule a public hearing on the appeal or review. The hearing shall be held in accordance with Section 27–132 (District Council hearing procedures).

(D) Within sixty (60) days after the close of the Council's hearing, the Council shall affirm, reverse, or modify the decision of the Planning Board, or return the proposed departure to the Planning Board to take further testimony or reconsider its decision.

(E) The Council shall give its decision in writing, stating the reasons for its action. Copies of the decision shall be sent to all persons of record and the Planning Board.

PG Code § 27–239.01(b)(9). The District Council is required to make "specific written findings of basic facts and conclusions." PG Code § 27–141.

With regard to the DDS request, we find that a "withdrawal of election" is clearly not provided for by the detailed statutory scheme. Notably, the DDS procedure is littered with "shalls" and provides a specific, mandatory path for an appeal after election to review. These code provisions clearly delineate a required procedure for an election to review a DDS procedure and require the District Council to hold a public hearing and reach a written decision.

B. The Procedure for Special Exception Requests

■ A closer question is whether the statutory procedure for a Special Exception request allows for a "withdrawal of exception." Similar to the DDS procedure, a Special Exception Request can move from the Office of the Zoning Hearing Examiner to the District Council by appeal or by the Council's own motion:

The Zoning Hearing Examiner's decision on an application for Special Exception shall be final thirty (30) days after filing the written decision, except:

(A) Where timely appeal has been made to the District Council[; or]

\* \* \*

(C) In any case where, within thirty (30) days after receipt of the Zoning Hearing Examiner's decision, the District Council, upon its own motion and by a majority vote of the full Council, elects to make the final decision on the case itself[.]

PG Code § 27–312(a)(2). The County Code does not require, after an election to review a special exception application, that a public hearing be held. Instead, the Code states that: "[w]henever the District Council conducts a public hearing (including an oral argument) for a Special Exception case, it shall do so in accordance with [the County Code.]" PG Code § 27–315 (emphasis added). The code further provides that "[t]he District Council **may conduct** oral argument in those zoning cases which the District Council elects to review[.]" PG Code § 27–131(c)(2) (emphasis added). The Petitioners seize on this language and argue that the permissive phrasing means that the District Council has the discretion *not* to conduct a public hearing or oral arguments.

We are not persuaded. The Petitioners ignore that the District Council's discretion is limited to whether the Council *will hold oral argument.* More generally, the Council's review of a Special Exception application is governed by Sections 27–132(f) and 27–141 of the Prince George's Zoning Ordinance, which accords the Council less discretion in how it

can handle the disposition of the appeal. Section 27–132(f) states:

(1) In deciding an appeal to the District Council, or Council election to review a decision made by the Zoning Hearing Examiner or the Planning Board, the Council shall exercise original jurisdiction.

(2) For any appeal or review of a decision made by the [ZHE], the Council may, based on the record, approve, approve with conditions, remand, or deny the application.

Section 27–141 further requires that "[t]he final decision in any zoning case shall be based only on the evidence in the record, and shall be supported by specific written findings of basic facts and conclusions."

The statute requires that a final decision, in this case, the Council's decision,[14] be "supported by specific written findings of basic facts and conclusions." This is a foundation of administrative law. *Harford County v. Preston,* 322 Md. 493, 505, 588 A.2d 772, 778 (1991) (The requirement of findings of fact "is in recognition of the fundamental right of a party to a proceeding before an administrative agency to be apprised of the facts relied upon by the agency in reaching its decision and to permit meaningful judicial review of those findings"); *Forman v. Motor Vehicle Admin.,* 332 Md. 201, 221, 630 A.2d 753, 764 (1993) ("Without findings of fact on all material issues, ... a reviewing court cannot properly perform its function.").

The Council argues, instead, that it can, without any written findings or conclusions, withdraw its election to review, making the prior agency decision the "final" decision. This withdrawal is conspicuously absent from the statutory options available to the Council. The statute allows the Council, after electing to review an agency decision, to (1) approve it, (2) approve it with conditions, (3) remand it, or (4) deny it. *See* Section 27–132(f). The Council does not have a fifth option to

---

14. After electing to review a decision by the ZHE, the ZHE's decision is no longer final. Instead, the Council's decision becomes the final decision.

"decide not to review it, making the agency decision final." Instead, the Council's "withdrawal of an election to review" is, in effect, an approval of the lower agency decisions in full, without any written findings of fact or conclusions that the law requires. This is not an option given to the Council under the statute.

The parties use a good portion of their briefs to debate the meaning of the Prince George's County Zoning Ordinance which states that the Council "shall exercise original jurisdiction" in any review action. The Petitioners trace the language to the Council Bill 76 of 1996, which "was enacted for the purpose of 'clarifying that all appeals to the District Council are an exercise of original jurisdiction[,]" as opposed to appellate jurisdiction. Apparently, this legislation was in response to a Court of Special Appeals decision, which identified the Council's jurisdiction as appellate jurisdiction, and thus required the Council to affirm the Planning Board's decision if it were supported by substantial evidence. *See County Council v. Curtis Regency Service Corp.*, 121 Md.App. 123, 708 A.2d 1058, *cert. denied*, 351 Md. 5, 715 A.2d 964 (1998). The Petitioners rely on this legislative history to argue that "original jurisdiction" language cannot be interpreted to impose additional requirements on the District Council. Even if the revisions to Section 27–132(f) had such a limited purpose, the balance of that section, and Section 27–141, clearly set forth the procedure that must follow an election to review. The Council's withdrawing its election to review is not an option allowed by the statute.

■■■ The Petitioners have also invoked the doctrine that courts give deference to the Council's interpretation of the County Code. No doubt, we give "considerable weight" to an agency's "interpretation and application" of the statute. *See, e.g., Board of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999). We have also stated, however, that "when a statutory provision is entirely clear, with no ambiguity whatsoever, 'administrative constructions, no matter how well entrenched, are not given weight.'" *Id.* at

69 n. 2, 729 A.2d at 381 n. 2 (*quoting Macke Co. v. Comptroller*, 302 Md. 18, 22–23, 485 A.2d 254, 257 (1984)). On close examination, the Council's belief that it may withdraw its election to review does not derive from an interpretation of a statutory passage, but merely the Council's blanket assertion that it is "free, after its review . . . to withdraw[ ] [its] election to review[.]" This claim defies the statutory procedure and is entitled to no weight.

Here, the District Council did not make its required findings, nor affirm, reverse, modify, or return the local decisions, as the statute required it to do. We thus agree with the CSA, and affirm its decision to order a remand to the District Council.[15]

### IV. The Permissible Scope of Review in the District Council and the Circuit Court

■ A central theme of the Petitioners' "eligibility" and "exhaustion" arguments is that the Citizens' impermissibly introduce at the judicial review arguments never raised before the agency. In Petitioners' words:

> The respondent [Citizens], other than Dedra Billings, hardly bothered to show up, and even Ms. Billings objected only to the architectural features on the new buildings, not the gas station or car wash operations themselves. The [C]itizens failed to articulate any sound objections to Eastern Petroleum's proposals . . . and they chose not to appeal [the decisions].
>
> * * *
>
> [The Citizens'] testimony demonstrated concerns-but not proofs . . . The [C]itizens proved nothing, submitted no evidence, and did not even advise . . . that they had substantial opposition to either of [EPC's] applications. [The Citi-

---

**15.** The District Council cautions that, under our holding, it will have to give written findings of fact and conclusions for a determination not to elect to review a case. The Council, however, fails to consider that the procedural requirements apply only after the Council elects to review the decision.

zens'] lengthy [Circuit Court] memorandum—by their counsel, who did not participate in administrative proceedings—is very much at odds with the brief oral submissions they made [at the agency level].

Petitioners see unfairness in allowing the Citizens to go forward with these allegedly expanded complaints:

What this case is about is fairness. That would be fairness to the applicant, Eastern Petroleum; fairness to the technical and administrative staffs of the Planning Board and District Council; and fairness to the agency decisionmakers themselves, the hearing examiner, the Planning Board members, and the District Council members. It is not fair, and it is not sound judicial policy, to allow parties in court to challenge administrative agency decisions on grounds radically different from those presented to the agency.

 Without question, a party to a District Council review hearing may not present new evidence. *See Colao,* 346 Md. at 348, 697 A.2d at 99 ("Although no new evidence may be presented at the District Council hearing, the Council may remand a case to the Zoning Hearing Examiner[.]"). A party may, however, present new arguments at the District Council hearing based on the existing agency record.

 The Council cites *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 390 A.2d 1119 (1978), and *Cicala v. Disability Review Board,* 288 Md. 254, 418 A.2d 205 (1980) for the proposition that "a party before an agency who sees objectionable evidence or incorrect procedure, or who has substantial objections to an application, must raise the point before the agency makes its final decision; he or she may not wait to argue the matter later, in court." This preservation requirement, although correctly stating the rule, does not advance Petitioners' cause. The requirement addresses what arguments may be made upon judicial review, and places no limitation on what arguments could be posited before the District Council. A failure to raise an argument at the first level of agency consideration does not bar a party from introducing the issue when appeal is made *within the agency.* When agency deci-

sions are subject to District Council review, the parties have an additional opportunity to raise an issue before the agency makes its final decision. *See Motor Vehicle Admin. v. Shepard*, 399 Md. 241, 260, 923 A.2d 100, 111 (2007) ("[I]n an action for judicial review of an adjudicatory administrative agency decision, the reviewing courts should decline to consider an issue not raised before the agency[.]").

A review of the agency record confirms that the Citizens have preserved several issues for judicial review. Three of the citizens appeared at the agency level and testified. David Johnson believed that the project involved "taking a nonconforming use and expanding it five times in perhaps the worst spot you can imagine[,]" and stated that it was dangerous and would harm the environment. Cheryl Corson focused on the traffic safety issues, and the lack of certain safety features in the plan. Dedra Billings raised architectural and aesthetic issues, among others. Although the Citizens did not introduce independent evidence outside of their testimony and so will be limited to the evidence in the record, they have raised some issues that are viable for judicial review.

## CONCLUSION

The Citizens, who are residents of Prince George's County and are aggrieved at the agency decision in this case, were eligible under the Regional District Act to seek a judicial review action challenging those decisions. The Citizens, moreover, exhausted their administrative remedies by appearing (and testifying) at the agency hearings. Once the District Council elected to review the decisions, the Citizens were not required to file an independent request for review. The District Council may not summarily withdraw its election to review and finalize the local agency decisions without following the statutory procedure for review. The District Council must justify its decision with written findings and conclusions and follow any other applicable procedural requirements.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**