# COUNTY COUNCIL FOR PRINCE GEORGE'S COUNTY, MARYLAND *v.* CARL M. FREEMAN ASSOCIATES, INC.

[No. 9, September Term, 1977.]

*Decided July 19, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, ELDRIDGE and ORTH, JJ., and RITA C. DAVIDSON, Associate Judge of the Court of Special Appeals, specially assigned.

*Michael O. Connaughton, Deputy County Attorney,* and *Steven M. Gilbert, Associate County Attorney,* with whom was *James C. Chapin, County Attorney,* on the brief, for appellant.

*Paul B. Rodbell* and *William V. Meyers,* with whom were *Alan R. Friedman* and *Meyers & Billingsley, P.A.* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This action, involving a comprehensive zoning amendment by petitioner County Council for Prince George's County, presents two essentially procedural issues for our consideration. On the one hand, the Council contends that this suit is not properly before us because respondent Carl M. Freeman Associates, Inc., instituted it by way of administrative appeal when no such remedy is provided by law. On the other hand, the respondent asserts that the map amendment is invalid as a matter of law because it was approved by resolution instead of by ordinance. Although we reject the petitioner's contention, the Council loses only the battle — with a measure of last minute curative assistance from the General Assembly, it wins the war (at least in this Court) since we conclude that the respondent's assertion that the amendment was invalidly approved is now moot.

The relevant facts are not in dispute. In 1974 the petitioner, sitting as the District Council for the Maryland-Washington Regional District in Prince George's County, initiated by Council Resolution CR-3-1974 a comprehensive rezoning of Planning Area 62, known as South Laurel-Montpelier. Pursuant to Section 30A.0 of the Zoning Ordinance for Prince George's County, such rezoning is effectuated by an action of the District Council which is

passed as a Council Resolution and is known as a Sectional Map Amendment (SMA). Public hearings on the proposed SMA were held in the first seven months of 1975, and on August 5 of that year, following review and discussion of the record and several proposed modifications, the District Council approved the South Laurel-Montpelier SMA with the adoption of Council Resolution CR-85-1975. Among the properties rezoned was that of the respondent.

Thirty days thereafter, on September 4, 1975, Freeman instituted an administrative appeal of the petitioner's decision to the Circuit Court for Prince George's County. The Council demurred, stating that the adoption of the SMA was "a purely legislative act from which no B-Rule appeal may be taken," and that Freeman had "failed to exhaust administrative remedies," but the demurrer was overruled. Later, respondent Freeman filed a motion for summary judgment in which it argued that CR-85-1975 was invalid because it was inconsistent with the relevant master plan. This motion was denied on September 28, 1976. However, on January 17, 1977, the trial court ruled in the respondent's favor on one of several issues of law which were advanced for determination prior to a trial on the merits. On that day, the court concluded that approval of the SMA by council resolution rather than by ordinance was invalid under § 8-101 (b) of Article 66D, Md. Code (1957, 1970 Repl. Vol., 1976 Cum. Supp.), and granted judgment in favor of Freeman. The petitioner noted an appeal from this order, and Freeman cross-appealed from the court's earlier order denying its motion for summary judgment. On March 8, 1977, we granted the Council's petition for certiorari before decision in the Court of Special Appeals.

Initially, we consider whether this Court has jurisdiction to decide the present case.[1] We conclude that we do, since it is clear that review of the petitioner's decision adopting the SMA, by way of appeal to the Circuit Court for Prince George's County, is authorized by Article 66D, § 8-106 (e),

---

1. Although the respondent moved to dismiss the appeal on the ground that it was taken by an improper party, we find its motion to be without merit and consequently we deny it without further comment.

and is governed by the provisions of Subtitle B of Chapter 1100 of the Maryland Rules.[2]

As we have recently stated on several occasions, the B Rules do not grant a right of appeal, but merely set forth the procedures governing appeals otherwise provided by law. *See Mont. Co. v. One Park North,* 275 Md. 193, 200-01, 338 A. 2d 892, 897 (1975); *Md.-Nat'l Cap. P. & P. v. Rockville,* 269 Md. 240, 247, 305 A. 2d 122, 127 (1973); *Urbana Civic v. Urbana Mobile,* 260 Md. 458, 462-63, 272 A. 2d 628, 631 (1971). *See also Morris v. Howard Res. & Dev. Corp.,* 278 Md. 417, 365 A. 2d 34 (1976). Rule B1 a states that these rules "apply to the review of *any final action* of an *administrative agency* by a court where such review is *specially authorized by statute* ...." (Emphasis supplied.) Clearly, the petitioner's adoption of Council Resolution CR-85-1975 was a "final action," and equally clear is the fact that when it sits as the District-Council in a zoning matter the County Council is an "administrative agency" as that term is broadly defined in Rule B1 b:

> The term "administrative agency," as used in this Subtitle, shall mean any board, department, commission, authority, commissioner or other officer of the State or of a county or local government, whether appointed or elected, whether legislative, administrative, executive, ministerial or quasi-judicial, whose action or decision is specifically subject to court review, except by way of mandamus, by any provision now or hereafter set forth in any general or local statute, ordinance or regulation now or hereafter in effect; but shall not mean any court created by Article IV of the Constitution of Maryland.

Finally, it is plain that judicial review is "specially authorized by statute." Sections 8-104 and 8-106 of Article 66D generally govern amendments to zoning regulations in

---

2. We note that a further right of appeal, from the circuit court to the Court of Special Appeals and to this Court, is also authorized by statute. Md. Code (1957, 1970 Repl. Vol., 1976 Cum. Supp.), Art. 66D, § 8-106 (j); *see* Code (1974, 1976 Cum. Supp.), Cts. & Jud. Proc. Art., § 12-201.

Prince George's County, and as defined in § 8-106 (d), the word "amendment" obviously includes the SMA process involved in the present action:

> (d) *Definitions for sections.* — For purposes of §§ 8-104, 8-105 and 8-106 herein, the word "amend" or "amendment" shall be deemed to include . . . any repeal or abolition of any map or part thereof, or any addition to any map, or any new map, or any other change in the map or maps.

Appeals from zoning amendment decisions are regulated by § 8-106 (e), which provides in pertinent part:

> (e) *Appeals authorized.* — In Prince George's County, any incorporated municipality located in Prince George's County, any person or taxpayer in Prince George's County, the applicant who is an aggrieved party, may have judicial review of any final decision of the district council.

By broadly defining the word "amendment" and by using the words "any final decision" in the § 8-106 (e) appeals provision, the legislature 'expressed an intent that council resolutions adopting SMA's be appealable in Prince George's County.[3]

The Council nonetheless suggests that the "any final decision" language of § 8-106 (e) should be construed so as not to apply to SMA decisions because such actions are "purely legislative." We reject this suggestion. While it is true that comprehensive rezoning is essentially a legislative function, *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 706, 376 A. 2d 483, 495 (1977), it is clear to us that the General Assembly can nonetheless provide for appeals from SMA decisions if it so desires, *see Eastgate*

---

**3.** We point out that when the legislature wished to authorize a more narrow right, as it did with respect to appeals in Montgomery County, it made plain that intent through the use of more restrictive language. Art. 66D, § 8-105 (a) (authorizing appeals only with respect to applications for map amendments); *see* Hilland v. Montgomery Co., 247 Md. 570, 233 A. 2d 783 (1967).

*Associates v. Apper,* 276 Md. 698, 700-01, 350 A. 2d 661, 663 (1976); *Criminal Inj. Comp. Bd. v. Gould,* 273 Md. 486, 500, 331 A. 2d 55, 64 (1975); *Lohss and Sprenkle v. State,* 272 Md. 113, 116, 321 A. 2d 534, 536 (1974), and courts may review such decisions to the extent permitted by separation of powers principles. Md. Decl. of Rts., Art. 8; *see Dep't of Nat. Res. v. Linchester,* 274 Md. 211, 334 A. 2d 514 (1975).[4]

Having determined the jurisdictional issue, we now turn to the validity of the SMA challenged by this appeal. Although the petitioner's decision was assailed on numerous fronts in the circuit court, the court based its ruling on a single ground and did not reach most of the issues raised by the respondent. Determining that Article 66D, § 8-101 (b) mandates the enactment of SMA's by ordinance, the judge concluded that CR-85-1975 was invalid because it was enacted by resolution. However, between the date of the court's decision (January 17, 1977) and our decision today, the General Assembly enacted Chapter 283 of the Laws of 1977, a curative act which we believe has the effect of validating the Council's action, regardless of whether prior to the passage of Chapter 283, § 8-101 (b) required SMA's to be approved by ordinance.[5] Of course, we are bound to apply the law as it exists at the time a case is decided by this Court, so long as its application does not interfere with intervening vested rights, *Rockville Fuel v. Gaithersburg,* 266 Md. 117, 127, 291 A. 2d 672, 677 (1972), or with other constitutionally protected rights. Consequently, because we conclude that as of June 1, 1977, any procedural

---

4. Inasmuch as the petitioner has not argued before this Court that the respondent failed to exhaust other available administrative remedies before appealing pursuant to § 8-106 (e), *cf.* Commission on Medical Discipline v. Bendler, 280 Md. 326, 373 A. 2d 1232 (1977), we need not pass on that issue. Likewise, since we conclude that the administrative method of appeal is proper, we do not consider the propriety of a declaratory judgment, mandamus or injunctive relief action as an alternative way to obtain review of the petitioner's decision. *See generally* Nottingham Village v. Balto. Co., 266 Md. 339, 357, 292 A. 2d 680, 689 (1972); Poe v. Baltimore City, 241 Md. 303, 308-09, 216 A. 2d 707, 709-10 (1966); Richmark Realty v. Whittlif, 226 Md. 273, 280-81, 173 A. 2d 196, 200 (1961); Baltimore v. Seabolt, 210 Md. 199, 209-10, 123 A. 2d 207, 211-12 (1956).

5. We point out that the legislature, by Chapter 285 of the Laws of 1977, also repealed and reenacted with amendments § 8-101 (b) so as to permit a district council to amend zoning maps by resolution as well as by ordinance.

defects in CR-85-1975 relating to the "ordinance versus resolution" dispute were cured, and that the act does not impinge on any procedural due process or vested rights insofar as they are involved in the issue we now rule upon, the sole question finally decided by the trial court is moot.

Chapter 283 of the Laws of 1977, repealing and reenacting with amendments Article 66D, § 1-105, provides:

> Any zoning ordinance, regulation, resolution, amendment or change, report, zoning map, or other zoning action enacted, adopted, made, or taken prior to the effective date of this act by the County Council of Montgomery County or the County Council of Prince George's County, acting respectively as the district councils of the regional district, or by the Commission under any applicable laws, are approved, ratified, validated, and confirmed, notwithstanding any defect in the procedure followed in the enactment, adoption, making, or taking of such ordinance, regulation, resolution, amendment or change, report, zoning map, or other zoning action, or any failure strictly to conform to or comply with the procedure specified in the applicable laws; any zoning map amendment enacted by resolution prior to the effective date of this Act by the County Council of Montgomery County or the County Council of Prince George's County, acting respectively as the district councils of the regional district are hereby ratified, confirmed and validated.

Although this law was enacted as an emergency measure to take effect from the date of its passage, and was approved by the governor on April 29, 1977, the respondent posits, and the petitioner apparently concedes, that the bill failed to receive the three-fifths vote required of such measures by Article XVI, Section 2 of the Maryland Constitution. Freeman maintains that because of this fact, Chapter 283 is a nullity. Furthermore, it contends that even if the law is not void, it nevertheless is either not applicable to the

present action or, if applicable, operates to deprive the respondent of its constitutional rights to procedural due process. We reject all of these contentions.

In the first place, so long as a bill is passed by a majority vote and is otherwise validly enacted, it is not a nullity merely because it is designated to be an emergency measure but fails to receive a three-fifths vote of both houses of the General Assembly. Pursuant to Article III, Section 31 of the Maryland Constitution, a law passed by the General Assembly takes effect on the June 1 following the legislative session unless otherwise expressly declared by the legislature or provided by the Constitution. Therefore, although Chapter 283 failed to become effective on April 29, 1977, as it would have had the bill received the requisite vote, the act nonetheless took effect on June 1, 1977. *See Allied American Co. v. Comm'r,* 219 Md. 607, 625-26, 150 A. 2d 421, 432 (1959); *cf. Yorkdale v. Powell,* 237 Md. 121, 132-33, 205 A. 2d 269, 275 (1964); *Culp ·v. Comrs. of Chestertown,* 154 Md. 620, 622-23, 141 A. 410, 412 (1928); 22 Op. Md. Att'y Gen. 230 (1937). To our knowledge, it is the unanimous rule throughout the country that an emergency bill which does not pass by the mandated percentage of votes, or which is otherwise found not to constitute a valid emergency measure, is not a nullity, but merely takes effect as provided by constitutional provision for non-emergency laws rather than at the earlier date provided for emergency acts. *See, e.g., State v. Neustadt,* 149 F. 2d 143, 146 (10th Cir. 1945); *State v. Cox,* 43 Ariz. 174, 30 P. 2d 825, 829 (1934); *Beaumont v. Faubus,* 239 Ark. 801, 394 S.W.2d 478, 485 (1965); *People v. Phillips,* 76 Cal.App.2d 515, 173 P. 2d 392, 396 (1946); *Taylor v. Commonwealth,* 305 Ky. 75, 202 S.W.2d 992, 995-96 (1947); *State v. Holman,* 355 S.W.2d 946, 950 (Mo. 1962); *Goodman v. Christensen,* 71 N. D. 306, 300 N. W. 460, 465 (1941); *Gayman v. Mullen,* 58 Okla. 477, 161 P. 1051, 1054 (1916); *Copus v. Chorn,* 136 Tex. 209, 150 S.W.2d 70, 71 (1941).

Secondly, we believe that Chapter 283 was intended to apply to the present case and may be applied without interference with any constitutional or vested rights of the

respondent. Clearly, the law was passed in order to validate zoning map amendments enacted by resolution, at least to the extent that such amendments may not be successfully attacked on the ground that they were adopted by resolution and not by ordinance.[6] We also conclude that the law is valid as applied in the present action. As Judge Singley, for this Court, recently stated in *Dryfoos v. Hostetter*, 268 Md. 396, 404, 302 A. 2d 28, 32-33 (1973):

> Although curative acts may be broadly characterized as being retroactive or retrospective in their operation, they are generally sustained on the theory that whatever a sovereign power may authorize in prospect, it may adopt and validate in retrospect, so long as there is no interference with vested rights or contractual obligations. [(Citations omitted.)]

This general rule restates what has been the law in Maryland for many decades. *See Leonardo v. County Comm.*, 214 Md. 287, 301-02, 134 A. 2d 284, 290-91, *cert. denied*, 355 U. S. 906 (1957); *O'Brian v. County Comm'rs.*, 51 Md. 15, 24 (1879). *See generally* 2 J. Sutherland, *Statutes and Statutory Construction* § 41.11 (4th ed. C. Sands 1973); 16 Am.Jur.2d *Constitutional Law* § 432 (1964); 16A C.J.S. *Constitutional Law* § 428 (1956). While the respondent refers us to the case of *Luxmanor Citizens v. Burkart*, 266 Md. 631, 296 A. 2d 403 (1972), for the proposition that the application of Chapter 283 would deprive it of its rights to procedural due process, we fail to perceive any substance to this claim insofar as it relates to the Council's approval of the SMA by resolution instead of by ordinance, and we find the *Luxmanor* decision irrelevant since the change of the zoning ordinance in that case was not a curative act and was not intended to apply retroactively. *See id.* at 644-46 [410-11]. Moreover, there has been no showing in the present case that the curative act interferes with any vested rights of the respondent in that no evidence was introduced that it obtained a building permit and undertook substantial

---

6. Whether Chapter 283 has any further ramifications is a question we do not now decide.

construction in reliance upon the zoning classification prior to the SMA. *See County Council v. District Land*, 274 Md. 691, 707, 337 A. 2d 712, 721 (1975); *cf. Dal Maso v. County Commrs.*, 182 Md. 200, 206, 34 A. 2d 464, 467 (1943).

Concluding that it would be inappropriate at this time to pass on the propriety of the denial of the respondent's summary judgment motion, and determining that further proceedings are required to resolve the other issues raised but not decided by the trial court, we shall vacate the judgment entered by the circuit court.

> *Judgment of the Circuit Court for Prince George's County vacated and case remanded to that court for further proceedings.*
> *Costs to be paid one-half by the petitioner and one-half by the respondent.*