*County Council of Prince George's County, MD Sitting as the District Council v. Chaney Enterprises Limited Partnership et al.*, No. 66, September Term, 2016, Opinion by Adkins, J.

**REAL PROPERTY — ZONING & LAND USE — MARYLAND CODE (1957, 2012 REPL. VOL., 2016 Supp.), § 22-407 OF THE LAND USE ARTICLE — JUDICIAL REVIEW:** Respondents, two mining companies and a mining trade organization, seek to challenge the adoption of amendments to an area master plan by Petitioner Prince George's County Council sitting as District Council under Maryland Code (1957, 2012 Repl. Vol.), § 22-407(a)(1) of the Land Use Article ("LU"). The broad language of LU § 22-407(a)(1), which provides for judicial review of "a final decision of the district council," without limitation, authorizes judicial review of area master plans. Additionally, petitioners seeking judicial review under LU § 22-407(a)(1) do not need to participate in proceedings before the district council or exhaust administrative remedies before seeking judicial review. Accordingly, LU § 22-407(a)(1) permits Respondents' challenge.

**REAL PROPERTY — ZONING & LAND USE — AMENDMENTS TO AREA MASTER PLAN:** Petitioner's amendments to an area master plan were based on the record, and therefore, under Prince George's County Code ("PGCC") § 27-646(a)(2), it did not need to hold a joint public hearing on them with the Prince George's County Planning Board. Nevertheless, Petitioner's adoption of the amendments was procedurally improper under PGCC § 27-646(a)(3), which requires that all amendments be sent back to the Planning Board for written comment. Therefore, the amendments are invalid. Because the challenged amendments are severable from the master plan, the remaining portions of the master plan still stand.

**REAL PROPERTY — ZONING & LAND USE — PREEMPTION — MARYLAND CODE (1975, 2014 REPL. VOL.), §§ 15-801 THROUGH 15-834 OF THE ENVIRONMENT ARTICLE — SURFACE MINING ACT:** Respondents challenged amendments to an area master plan on the grounds that they are preempted by Maryland's Surface Mining Act ("SMA"), Md. Code (1975, 2014 Repl. Vol.), §§ 15-801 through 15-834 of the Environment Article ("EN"). Because the State's authority to grant mining permits is contingent on compliance with local zoning laws, the General Assembly did not act with such force that it demonstrated an intent for the State to occupy the entire surface mining field. Accordingly, the SMA does not preempt local zoning and planning authority.

Circuit Court for Prince George's County
Case No.: CAL 13-24863
Argued: March 30, 2017

IN THE COURT OF APPEALS

OF MARYLAND

No. 66

September Term, 2016

COUNTY COUNCIL OF PRINCE GEORGE'S
COUNTY, MD SITTING AS THE DISTRICT
COUNCIL

v.

CHANEY ENTERPRISES LIMITED
PARTNERSHIP et al.

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

Opinion by Adkins, J.

Filed: July 28, 2017

Land use decisions are often contentious and frequently challenged—both administratively and in court. Petitioner County Council of Prince George's County sitting as District Council amended an area master plan to prohibit surface mining in certain mineral-rich areas of the county. Today we consider whether Respondents—two mining companies and a mining trade organization—can seek judicial review of the master plan. We also determine whether the master plan amendments are preempted by state law.

## BACKGROUND

The Maryland-Washington Regional District Act ("RDA") governs zoning, planning, and other land use matters in most of Prince George's and Montgomery Counties. Md. Code (1957, 2012 Repl. Vol.), § 20-101 of the Land Use Article ("LU"); *see also Cty. Council of Prince George's Cty. v. Zimmer Dev. Co.*, 444 Md. 490, 521 (2015).[1] Through the RDA, and subject to its provisions, the State granted these counties the authority to regulate land use in those parts of the Maryland-Washington Regional District ("Regional District") located within their respective borders. LU §§ 20-202, 22-104. Under the RDA, the District Council has the authority to adopt and amend zoning laws and maps, LU § 22-104(a)(1), (2), and must periodically consider whether to amend the master plans for the areas located in the Regional District, LU § 21-105(c)(1). The District Councils for Prince George's County and Montgomery County consist of their respective county councils. LU

---

[1] *County Council of Prince George's County v. Zimmer Development Co.*, 444 Md. 490 (2015), contains an excellent, comprehensive tutorial authored by Judge Glenn T. Harrell, Jr. on the land use regime in Prince George's County. *Id.* at 502–36.

§§ 22-101, 14-101(f)(1). The RDA divides the counties' planning and zoning authorities into separate titles—Title 21 governs planning and Title 22 governs zoning.

Maryland has long recognized a distinction between zoning and planning. *Appleton Reg'l Cmty. Alliance v. Cty. Comm'rs of Cecil Cty.*, 404 Md. 92, 102 (2008). Although they "complement each other and serve certain common objectives," they achieve those objectives through different means. *Zimmer,* 444 Md. at 505–06 (citation omitted). Zoning is "the process of setting aside disconnected tracts of land varying in shape and dimensions, and dedicating them to particular uses designed in some degree to serve the interests of the whole territory affected by the plan." *Id.* at 505 (citation omitted). The primary goal of zoning is "the immediate regulation of property use through the use of [zoning] classifications." *Mayor & Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 530 (2002) (citations omitted). A property owner may receive a special exception, which permits a use not automatically allowed by the zoning classification. *See* Stanley D. Abrams, *Guide To Maryland Zoning Decisions* § 11.01 (5th ed. 2012). Special exceptions must be authorized by an administrative body pursuant to existing zoning laws and are subject to standards and conditions. *Id.*

Plans, on the other hand, serve as a guide for long-term land use and development goals and propose zoning changes to implement these aims. *Rylyns*, 372 Md. at 529 (footnote omitted); *Pattey v. Bd. of Cty. Comm'rs for Worcester Cty.*, 271 Md. 352, 360 (1974) (citations omitted). Because plans do not regulate property use, zoning tools such as sectional map amendments, which alter zoning for large portions of land, are used to implement their recommendations. 1 Sara C. Bronin & Dwight H. Merriam, *Rathkopf's*

2

*The Law of Zoning and Planning* § 1:41 (2017); *see Cty. Council for Montgomery Cty. v. Dist. Land Corp.*, 274 Md. 691, 696 (1975) (quoting from a District Council resolution explaining that a sectional map amendment was adopted to bring an area into conformance with a master plan).

### FACTS AND LEGAL PROCEEDINGS

For zoning and planning purposes, Prince George's County is divided into seven subregions, each with its own master plan. Subregion 5, the focus of this appeal, covers nearly 74 square miles of land located in the southwest corner of Prince George's County, just south of Washington, D.C. Subregion 5 is a major source of sand and gravel for construction projects in the surrounding area. Respondents Chaney Enterprises Limited Partnership ("Chaney") and Southstar Limited Partnership ("Southstar") own and operate sand and gravel mines in Prince George's County.[2] Respondent Maryland Transportation Builders and Materials Association ("MTBMA") is a trade organization that represents the mining industry and has members with mining operations located in the county (collectively, "Mining Entities").

In 2002, Prince George's County approved a new general plan that set forth the long-term vision for land use and development in the county. As part of its vision, the 2002 Prince George's County Approved General Plan ("2002 General Plan") divided the county into three land use areas called the Developed, Developing, and Rural Tiers.

---

[2] Respondent Chaney Enterprises Limited Partnership ("Chaney") received a special exception to operate a sand and gravel mine in the Developing Tier in May 2013.

Approximately three-quarters of Subregion 5 was placed into the Developing Tier, with the remainder in the Rural Tier.

Several years later, the Preliminary 2009 Subregion 5 Master Plan ("2009 Master Plan") revised the subregion's master plan to reflect the goals and policies of the 2002 General Plan. The 2009 proposed plan recognized that "[s]and and gravel [are] essential element[s] of new construction in the Washington, D.C. [ ] region" and sought to "capitalize[ ] on the extraction of sand and gravel resources prior to the land being pre-empted by other land uses." It also set a goal of providing "commercially viable access to sand and gravel resources." Petitioner Prince George's County Council sitting as District Council ("District Council") adopted the 2009 Master Plan in September 2009.

In 2012, the Circuit Court for Prince George's County invalidated the 2009 Master Plan due to the District Council's failure to follow State-mandated procedures. In April 2013, the District Council held a joint public hearing with the Prince George's County Planning Board ("Planning Board") on a new plan, the 2013 Subregion 5 Master Plan ("2013 Master Plan"), which contained the same goals and policies for surface mining as the 2009 Master Plan. At the hearing and in written comments, several participants expressed concern about the effects of mining operations in Subregion 5 on the surrounding communities. The Mining Entities did not appear at the hearing or submit written comments on the 2013 Master Plan. After considering the oral and written testimony, the Planning Board added more detailed special exception guidelines, but it did not propose any changes to the 2013 Master Plan's sand and gravel policies.

4

On July 8, 2013, the District Council met to consider several zoning matters, including the 2013 Master Plan. The meeting notice did not indicate that the District Council would be considering matters related to surface mining.[3] At the meeting the District Council considered the testimony and exhibits related to the 2013 Master Plan, and then directed its staff "to prepare a resolution of approval with revisions."

On July 24, 2013, the District Council adopted, by resolution ("Resolution"), the 2013 Master Plan with amendments added since its July 8, 2013 meeting ("the Amendments"). The purpose of the 2013 Master Plan was to "establish[ ] policies and strategies to carry out a land use, preservation, and development vision for [ ] Subregion 5" consistent with the 2002 General Plan. The Amendments "restrict[ed] sand and gravel mining to the [R]ural [T]ier." It altered the plan's goal from "capitaliz[ing]" on sand and gravel resources to "balanc[ing] the need for" them against "the potential negative impact and nuisance to nearby properties and the environment" and removed language that prioritized the extraction of sand and gravel resources over other land uses. The District Council inserted language to "[e]ncourage" mining companies to "provide specific evidence" of a mine's economic benefit. The plan was also amended to require mining companies to "mitigate on[-] and off-site transportation impacts" and potentially limit the

---

[3] Although the agenda for the July 8, 2013 public hearing of the Prince George's County Council sitting as District Council ("District Council") is not part of the record before us, counsel for the District Council, in response to a question from the Court during oral argument, acknowledged that the notice of the July 8, 2013 work session did not include anything about surface mining.

5

hours and duration of mining activities.  Finally, the Amendments required mining

companies "to achieve post[-]mining reclamation that meets environmental needs."[4]

The District Council did not send the Amendments back to the Planning Board for

comment or a public hearing prior to their approval.  On August 15, 2013, the District

Council published a public notice announcing its approval of the 2013 Master Plan with

the Amendments.

On August 2013, the Mining Entities filed a petition for judicial review of the 2013

Master Plan in the Circuit Court for Prince George's County pursuant to LU § 22-

407(a)(1).  The Mining Entities argued that the Amendments were invalid because the

District Council failed to follow procedural requirements for their adoption.  They also

argued that the Amendments were preempted by Maryland's Surface Mining Act

("SMA").[5]  In its opposition to the Mining Entities' petition, the District Council raised

four jurisdictional arguments for dismissal.  Specifically, it argued that the petition was not

properly before the court because: (1) none of the Mining Entities participated in the 2013

Master Plan proceedings; (2) the Mining Entities failed to exhaust administrative remedies

---

[4] The only other amendment changed the classification of three roadways.

[5] Respondents Chaney, Southstar Limited Partnership ("Southstar"), and the Maryland Transportation Builders and Materials Association ("MTBMA") (collectively, "Mining Entities") also argued that the District Council exceeded its authority in adopting the amendments to the 2013 Master Plan ("the Amendments"), that its decision was arbitrary and capricious, and that it was not supported by substantial evidence in the record. The Circuit Court for Prince George's County concluded that the amendments were within the scope of the District Council's authority and supported by substantial evidence in the record.  The Court of Special Appeals did not reach these issues, and the Mining Entities have not raised them with this Court.

by applying for a special exception; (3) the 2013 Master Plan is not subject to judicial review; and (4) the case was not ripe for review.

The Circuit Court affirmed the District Council's adoption of the Amendments, and found that LU § 22-407 only authorized judicial review of "sectional map amendments and zoning ordinances, and not [ ] master plans." The court also concluded that the Amendments were not preempted by the SMA. The Mining Entities appealed to the Court of Special Appeals, which reversed in an unreported per curiam opinion. *Chaney Enters. Ltd. P'ship v. Cty. Council of Prince George's Cty.*, 2016 WL 4698144, at *1 (Md. Ct. Spec. App. Sept. 7, 2016). The intermediate appellate court rejected the District Council's jurisdictional challenges to the Mining Entities' suit. It held that the 2013 Master Plan was invalid because the District Council failed to send the Amendments back to the Planning Board for written comment. *Id.* at *10. On the preemption question, the court held that the SMA did not preempt the Amendments.[6] *Id.* at *14. The District Council filed a petition for writ of certiorari, and the Mining Entities filed a cross-petition.

We granted *certiorari* on both petitions. The District Council presented the following questions for our review:[7]

---

[6] The panel was split on the preemption question. Judge Christopher B. Kehoe joined Judge Andrea M. Leahy's opinion on the issue but also wrote a separate concurring opinion. *Chaney Enters. Ltd. P'ship v. Cty. Council of Prince George's Cty.*, 2016 WL 4698144, at *12–*14 (Md. Ct. Spec. App. Sept. 7, 2016). Judge Robert A. Zarnoch dissented, finding that the Amendments were preempted by the Surface Mining Act ("SMA"). *Id.* at *10–*12.

[7] We have consolidated, rephrased, and reordered the questions from the District Council's Petition for Writ of Certiorari:

1. Can Respondents seek judicial review of the 2013 Master Plan under LU § 22-407?

2. Did the trial court correctly uphold the District Council's adoption of the 2013 Master Plan Amendments as procedurally proper?

The Mining Entities presented one question for our review:[8]

Are the District Council's Amendments to the 2013 Master Plan preempted by the SMA?

---

1. Whether Section 22-407 of the Land Use Article and Maryland Rule 7-201, *et seq.*, authorizes the filing of a petition for judicial review as a modality to maintain a judicial challenge to an area master plan?

2. Whether Section 22-407 of the Land Use Article and Maryland Rule 7-201, *et seq.*, authorizes a *non-party* to an agency proceeding approving an area master plan to file a petition for judicial review as a modality to maintain a judicial challenge to the approved plan?

3. Whether *Anne Arundel* [*Cty.*] *v. Bell*, 442 Md. 539 [ ] (2015), requires Respondents to demonstrate taxpayer standing (as opposed to property owner standing), in order to maintain a judicial challenge to an area master plan?

4. Whether Respondents failed to exhaust administrative remedies?

5. Did the Court of Special Appeals err when it invalidated the District Council's area master plan?

[8] We have rephrased the question presented from the Mining Entities' petition:

1. Whether the mining restrictions, including the categorical ban on mining, imposed by the District Council through amendments to the Subregion 5 Master Plan are preempted by the comprehensive and all-encompassing State law regulatory scheme governing surface mining in Maryland.

Because we answer the District Council's first question in the affirmative and the remaining questions in the negative, we shall affirm the judgment of the Court of Special Appeals. We will, however, conclude that the Amendments are severable and that the remaining portions of the 2013 Master Plan still stand.

## STANDARD OF REVIEW

Judicial review of an administrative agency action is typically "limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *Marzullo v. Kahl*, 366 Md. 158, 171 (2001) (citation omitted). But the three questions we are tasked with answering—(1) whether LU § 22-407 authorizes judicial review of an area master plan; (2) whether the adoption of the Amendments was procedurally proper; (3) and whether the Amendments are preempted by the State's surface mining laws—are questions of law, which we review without deference. *See Zimmer*, 444 Md. at 553 (citation omitted).

## DISCUSSION

The District Council has presented a barrage of interwoven jurisdictional and procedural arguments which we will attempt to untangle. Its primary contention is that LU § 22-407(a)(1) does not authorize judicial review of area master plans. As its fallback position, the District Council asserts that even if LU § 22-407(a)(1) permits judicial review in this case, the Mining Entities must meet certain threshold requirements before proceeding in court. Finally, the District Council contends that it complied with the

9

procedural requirements for adopting the Amendments. The Mining Entities, of course, disagree.

On the preemption question, the Mining Entities argue that the Amendments are preempted by the SMA, which grants the Maryland Department of the Environment ("MDE") authority to issue surface mining permits. In response, the District Council asserts that the General Assembly did not intend for the permitting process to supplant local land use authority, and therefore the Amendments are not preempted.

**Judicial Review Under LU § 22-407(a)(1)**

The District Council contends that the 2013 Master Plan merely sets land use policies—unlike zoning, it is not binding—and therefore is not subject to judicial review. In support of its argument, the District Council notes that the 2013 Master Plan was adopted pursuant to its planning authority under Title 21, not its zoning authority under Title 22. Because LU § 22-407(a)(1) appears in Title 22, not Title 21, the District Council argues, it does not authorize judicial review of the Amendments.[9]

The RDA authorizes judicial review of certain District Council decisions under LU § 22-407(a)(1). When the Mining Entities filed their petition for judicial review, it provided:

---

[9] The District Council relies on *Zimmer* for the proposition that area master plans are not subject to judicial review. It points to dicta in which we stated that "[t]he advisory nature of plans makes direct judicial review of their adoption and approval infrequent, at best." *Zimmer*, 444 Md. at 522. But this statement did not relate to the question before the Court. *Id.* Instead, we considered the District Council's role in reviewing a Planning Board decision. *Id.* at 553.

10

(a)(1) Judicial review of **a final decision** of the district council, including an individual map amendment or a sectional map amendment, may be requested by:
  (i)   any municipal corporation, governed special taxing district, or person in the county;
  (ii)  any civic or homeowners association representing property owners affected by the final decision; or
  (iii) if aggrieved, the applicant for the zoning map amendment.

(Emphasis added.)[10]

This is not the first time that we have been tasked with interpreting the RDA's judicial review provisions. In *County Council for Prince George's County v. Carl M. Freeman Associates., Inc.*, 281 Md. 70 (1977), the Court considered whether the District Council's approval of a rezoning sectional map amendment was subject to judicial review under Maryland Code (1957, 1970 Repl. Vol., 1976 Cum. Supp.), Article 66D, § 8-106(e),

---

[10] Maryland Code (1957, 2012 Repl. Vol.), § 22-407 of the Land Use Article ("LU") has been amended twice since the Mining Entities filed their petition for judicial review, with the changes effective on April 8, 2014 and October 1, 2015. 2014 Md. Laws ch. 45; 2015 Md. Laws ch. 365. It currently provides:

(a) *Authorized* — (1) Judicial review of any final decision of the district council, including an individual map amendment or a sectional map amendment, may be requested by any person or entity that is aggrieved by the decision of the district council and is:
  (i)   a municipal corporation, governed special taxing district, or person in the county;
  (ii)  a civic or homeowners association representing property owners affected by the final decision;
  (iii) the owner of the property that is the subject of the decision; or
  (iv)  the applicant.

a predecessor to LU § 22-407(a)(1). *Id.* at 72–74. Similar to the provision at issue here, the statute provided for "judicial review of **any final decision** of the district council." *Id.* at 75 (emphasis added). Unlike the contested provision, it did not expressly provide for review of sectional map amendments. The Court rejected the District Council's argument that a sectional map amendment is "purely legislative" and therefore was not a final decision subject to judicial review. *Id.* It reasoned that "by using the words 'any final decision' . . . the [L]egislature expressed an intent that council resolutions adopting [sectional map amendments] be appealable in Prince George's County." *Id.* The District Council argues that we have not extended this holding to master plans, and we should not do so now. But we think that *Freeman*'s logic applies with equal force in this case.

The *Freeman* Court further reasoned that the General Assembly intended to provide broad judicial review in Prince George's County because the narrower Montgomery County provisions only permitted appeals from applications for map amendments. *Freeman*, 281 Md. at 75 n.3 (citing Art. 66D, § 8-105(a)). This is still the case. As currently codified, LU § 22-402(a)(1) limits judicial review in Montgomery County to "a final action of the district council on an application for an individual map amendment or a sectional map amendment." A comparison of these two sections demonstrates that if the General Assembly had wanted to restrict judicial review under LU § 22-407, it would have done so. *See Harford Cty. v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 86 (2007) ("[T]he Legislature is presumed to have meant what it said and said what it meant." (citation and internal quotation marks omitted)).

Although LU § 22-407(a)(1) does not expressly list master plan amendments as decisions subject to judicial review, its text broadly authorizes, without limitation, judicial review of "a final decision" of the District Council. This is not the exact same language the *Freeman* Court interpreted. When LU § 22-407(a)(1)'s predecessor statute was repealed and recodified in the Land Use Article, the General Assembly replaced "any" with "a," but the legislative history reveals that the General Assembly intended to recodify the statute without substantive change.[11] 2012 Maryland Laws ch. 426. Thus, we read the contested provision as broadly as the *Freeman* Court interpreted its previous iteration. LU § 22-407 can readily be interpreted to mean that the General Assembly intended to authorize judicial review of any final decision the District Council has the authority to make—whether a planning decision or a zoning decision. Moreover, although the "scope of review by Maryland courts of the legislative decisions embodied in original zonings and comprehensive rezonings is quite narrow," that scope broadens when "a relevant ordinance or regulation, or specific zoning, subdivision, or other land use approval, make compliance with the plan recommendations mandatory." *Zimmer*, 444 Md. at 509, 522;[12] *Rylyns*, 372

_____

[11] Since the Mining Entities filed their petition for judicial review, the General Assembly has changed "a final decision" back to "any final decision" in LU § 22-407(a)(1). 2015 Md. Laws ch. 365. This is further evidence that the General Assembly did not intend to make a substantive change when it recodified the provision in 2012.

[12] The District Council also points to three recent cases, *Maryland Overpak Corp. v. Mayor and City Council of Baltimore*, 395 Md. 16 (2006), *Anderson House, LLC v. Mayor and City of Rockville*, 402 Md. 689 (2008), and *MBC Realty, LLC v. Mayor and City Council of Baltimore*, 403 Md. 216 (2008), for the proposition that comprehensive zoning legislation is not subject to judicial review because it is advisory, not mandatory. But these cases involved different judicial review provisions—Md. Code (1951, 2003 Repl. Vol., 2005 Supp.), Art. 66B, § 2.09(a)(1)(ii) and § 4.08(a)(1)—than the one at issue here—

13

Md. at 530–31 ("We repeatedly have noted that plans . . . are advisory in nature and have no force of law absent statutes or local ordinances linking planning and zoning. Where the latter exist, however, they serve to elevate the status of comprehensive plans to the level of true regulatory device." (footnote and citation omitted)); *see also HNS Dev., LLC v. People's Counsel for Balt. Cty.*, 425 Md. 436, 457 (2012) ("[W]hen the development regulations incorporate Master Plan compliance[,] the Master Plan itself becomes a regulatory device, rather than a mere guide and recommendation.").

The District Council's July 24, 2013 Resolution approving the Amendments is clear and definitive in its adoption of policy to "[r]estrict sand gravel mining to the [R]ural [T]ier," a well-defined geographical area. The District Council acknowledges that the Mining Entities will need to apply for special exceptions for sand and gravel operations.[13] And § 27-317(a)(3) of the Prince George's County Code ("PGCC") requires that a special exception use may only be approved if "[t]he proposed use **will not substantially impair the integrity of any validly approved Master Plan or Functional Master Plan,** or, in

LU § 22-407(a)(1). Both § 2.09(a)(1)(ii) and § 4.08(a)(1) limited judicial review to a "zoning action" taken by a local legislative body. This Court found that legislative acts such as comprehensive zonings do not qualify for judicial review under these provisions because they are not zoning actions. *Md. Overpak*, 395 Md. at 50 (§ 2.09(a)(1)(ii)); *Anderson House*, 402 Md. at 707 (§ 4.08(a)(1)). This is not the case for LU § 22-407(a)(1)—it does not use the term "zoning action," and we have never restricted the type of actions subject to judicial review under this provision.

[13] Concerning its exhaustion of administrative remedies argument, addressed *supra*, the District Council asserts: "To the extent that any entity of Chaney has or acquires property in the [Subregion 5 Master Plan] area, zoned for sand and gravel mining, the adjudicatory remedies, provided by the [RDA] and [Prince George's] County Code for special exceptions, must be pursued and exhausted before resort to the courts."

14

the absence of a Master Plan or Functional Master Plan, the General Plan." (Emphasis added.) This county law creates the link between planning and zoning that elevates the Amendments to a regulatory device. By the same token, when the landowner applies for a permit to engage in surface mining under the SMA, the MDE "may not issue the permit until the appropriate county has . . . [certified in writing] that the proposed land use conforms with all applicable county zoning and land use requirements." Md. Code (1975, 2007 Repl. Vol.), § 15-810(c)(2) of the Environment Article ("EN"). In our view, these legislative provisions give the District Council the muscle to ensure that its policy to "restrict sand and gravel mining to the rural tier" will be enforced—a further confirmation that the Amendments created a regulatory device that, based on *Rylyns* and *Freeman*, is subject to judicial review.

In sum, based on the statutory language in LU § 22-407 and the binding regulatory nature of the Amendments, we conclude that judicial review is authorized in this case.[14]

---

[14] Relying on our recent decision in *Anne Arundel County v. Bell*, 442 Md. 539 (2015), the District Council argues that the Mining Entities must establish taxpayer standing to sustain a challenge to comprehensive zoning legislation. We disagree. Taxpayer standing is a "common law standing doctrine" that "permits taxpayers to seek the aid of courts, exercising equity powers, to enjoin illegal and *ultra vires* acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer." *Id.* at 576 (quoting *State Ctr., LLC v. Lexington Charles Ltd.*, 438 Md. 451, 538 (2014)). Standing, however, "may be grounded on a statute conferring a legal interest or privilege." *Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 432 Md. 292, 313 (2013). The Mining Entities pursue judicial review under LU § 22-407(a)(1), which provides the elements to establish standing to challenge "any final decision" of the District Council. This section creates independent statutory grounds—separate from the common law taxpayer standing doctrine—to seek judicial review. Because we concluded, *supra*, that the Mining Entities' suit falls under the ambit of LU § 22-407(a)(1), the common-law taxpayer standing doctrine does not apply.

**Participation in Administrative Proceedings**

The District Council contends that because the Mining Entities did not attend any of the public hearings on the 2013 Master Plan, they are barred from seeking judicial review. Under the Administrative Procedure Act ("APA"), to be entitled to judicial review of a final agency decision a person must be a party to agency proceedings and be aggrieved by that final decision. Md. Code (1957, 2014 Repl. Vol.), § 10-222(a)(1) of the State Government Article ("SG"); *Cty. Council of Prince George's Cty. v. Billings*, 420 Md. 84, 97 n.10 (2011). There is a "low minimum threshold of required action" to become a party to agency proceedings. *Billings*, 420 Md. at 101–02. We have explained that "anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter being considered by that agency" satisfies this requirement. *Sugarloaf Citizens' Ass'n v. Dep't of Env't*, 344 Md. 271, 286–87 (1996) (quoting *Morris v. Howard Research & Dev. Corp.*, 278 Md. 417, 423 (1976)).

But the District Council's argument conflates standing to seek judicial review under the APA with standing to seek judicial review under LU § 22-407(a)(1). In *Boyds Civic Ass'n v. Montgomery County Council*, 309 Md. 683 (1987), we held that the APA does not apply to proceedings before a county council. *Id.* at 703–04. In reaching our holding, we concluded that the Montgomery County Council, which was sitting as District Council, was not an "agency" under the APA. *Id.* at 704. The APA defined the term then as it does today—"a unit that: (i) is created by general law; (ii) operates in at least [two] counties; and (iii) is authorized by law to adjudicate contested cases." *Compare* Md. Code (1957, 1984 Repl. Vol.), SG § 10-201(b)(2), *with* Md. Code (1957, 2014 Repl. Vol.), SG § 10-

16

202(b)(2). We reasoned that although the RDA assigns zoning and planning duties to the Montgomery County Council, it was "created by the Montgomery County [C]harter, not by general law" and "[i]t obviously operates only in Montgomery County." *Boyds*, 309 Md. at 704. Therefore, "it fail[ed] to fit the definition of 'agency' contained in [the APA]." *Id.*

The District Council similarly fails to fit the APA definition of "agency." Although the RDA—a general law—delegates the District Council zoning and planning authority, the County Council, which sits as District Council, was created by the Prince George's County Charter and it only operates in that county. PGCC § 2-101. Therefore, the APA—and its participation requirement—does not apply to proceedings before the District Council.

To support its argument that participation and aggrievement are still required, the District Council relies on *County Council of Prince George's County v. Billings*, in which we unnecessarily applied the APA's judicial review requirements in addition to those in LU § 22-407(a)(1).[15] 420 Md. at 97–98. We concluded that citizens who sought judicial review of two District Council decisions satisfied the "non-demanding" statutory standing requirements of LU § 22-407(a)(1) as well as the APA's participation and aggrievement requirements. *Id.* But *Billings* did not graft the APA's standing requirements onto LU § 22-407(a)(1). Here, LU § 22-407(a)(1) expressly authorizes judicial review—and,

---

[15] *County Council of Prince George's County v. Billings*, 420 Md. 84 (2011), applied Maryland Code (1957, 2003 Repl. Vol.), Article 28, § 8-106(e), which is where LU § 22-407 was located prior to its recodification.

17

unlike the APA's provision, it does not require participation to establish standing. Moreover, the Mining Entities clearly satisfy standing requirements of LU § 22-407(a)(1). Chaney and Southstar are persons in the county, and the MTBMA represents at least one mining entity that owns property in the Developing Tier of Subregion 5, where the Amendments prohibit surface mining. *See* LU § 22-407(a)(1)(i), (ii).

Furthermore, it runs counter to logic that we would require participation in proceedings as a prerequisite to judicial review when the District Council did not give notice that it was considering amending the 2013 Master Plan. The Mining Entities are seeking judicial review because the District Council's failure to follow proper procedures resulted in their inability to weigh in on the proposed changes, *i.e.*, participate.

### Exhaustion of Administrative Remedies

The District Council contends that Respondents Chaney and Southstar must exhaust the RDA's administrative remedies before resorting to the courts.[16] It relies on *Maryland Reclamation Associates v. Harford County* (*MRA II*), 342 Md. 476 (1996), and *Prince George's County v. Ray's Used Cars*, 398 Md. 632 (2007), for the proposition that Chaney

---

[16] *See* Prince George's County Code § 27-410 (providing additional requirements for surface mining special exceptions); LU § 25-209 of the (requiring, in approving a special exception for sand and gravel mining, that the Maryland-National Capital Park and Planning Commission prepare a report which shall "comprehensively evaluate the request [for a special exception] by analyzing the impact of the proposed mining activities on the surrounding area").

18

and Southstar must first apply for special exceptions before they can petition for judicial review of the area master plan amendments. We are not persuaded.

In *MRA II*, a landowner brought a declaratory judgment action challenging land-use ordinances governing rubble landfills. 342 Md. at 485. We declined to address the landowner's arguments because Harford County had established a zoning board of appeals pursuant to the Express Powers Act ("EPA"), which mandated exhaustion before a party could seek judicial review. *Id.* at 494–97. We explained that if the General Assembly "has provided an administrative remedy for a particular matter, . . . this Court has 'ordinarily construed the pertinent legislative enactments to require that the administrative remedy be first invoked and followed' before resort to the courts." *Id.* at 493 (alteration omitted) (quoting *Bd. of Educ. for Dorchester Cty. v. Hubbard*, 305 Md. 774, 786 (1986)).

In *Ray's*, 18 used car dealers challenged the constitutionality of a Prince George's County zoning ordinance that restricted the size of used car lots under the Declaratory Judgments Act. 398 Md. at 636. We concluded that the car dealers had to exhaust the administrative remedies provided to them under the RDA and the PGCC before seeking a declaratory judgment. *Id.* at 650. We explained that "the adjudicatory administrative and judicial review procedures under the Regional District Act . . . are available to furnish relief to each of the plaintiff[s]." *Id.* at 647.

Unlike the *MRA II* and *Ray's* petitioners, the Mining Entities are using a procedure provided under the RDA. They are challenging the Amendments under LU § 22-407(a)(1), which expressly provides for judicial review of "any final decision" of the District Council. Because the Mining Entities seek relief through a judicial review procedure available to

19

them under the RDA as opposed to seeking relief under a separate statute, we find that exhaustion is not mandated here.

The Court of Special Appeals recognized two additional statutory provisions that cut against the District Council's exhaustion argument. First, LU § 22-407(a)(2) sets a 30-day deadline for filing a petition for judicial review. Even if a party submitted a special exception application before the 30-day deadline, the lengthy special exception process would not conclude before the window for seeking judicial review had closed. Second, LU § 22-407(a)(1)(ii) expressly authorizes civic associations such as the MTBMA to seek judicial review. Such associations cannot apply for a special exception for surface mining.

The doctrine requiring exhaustion of administrative remedies is longstanding—but it is not absolute. *Harbor Island Marina, Inc. v. Bd. of Cty. Comm'rs of Calvert Cty.*, 286 Md. 303, 308 (1979) ("[T]here are few absolutes in the law, and the rule that an administrative remedy must be exhausted before recourse is had to the courts is not one of them." (quoting *State Dep't of Assessments & Taxation v. Clark*, 281 Md. 385, 403 (1977)). We do not read the right to judicial review established in LU § 22-407(a)(1) to require that this challenge—to the validity of the substantive restrictions enacted and the procedural method of enactment—be preceded by completion of the special exception administrative process. In *Harbor Island Marina*, we explained that an exception to the exhaustion doctrine "permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority (including whether it was validly enacted) of the legislative body to adopt the legislation from which relief is sought." 286 Md. at 308.

The Mining Entities' procedural and preemption arguments attack the validity of the District Council's adoption of the Amendments.

**Adoption of the 2013 Master Plan with Amendments**

We now turn to the merits of the Mining Entities' claims. They first contend that the District Council "unilaterally and materially changed" the 2013 Master Plan during its July 8, 2013 meeting without referring the Amendments back to the Planning Board for comment and urge us to invalidate the plan's adoption. The District Council responds that the Amendments were properly enacted because they were based on the record before the Planning Board.

In support of its argument, the District Council cites PGCC § 27-646(a)(2), which provides, in relevant part: "If the District Council considers amendments to the adopted plan that are **not based on the record** . . . , then at least one (1) additional joint public hearing shall be held with the Planning Board on the amendments." (Emphasis added.) A review of the record before the District Council reveals testimony and written comments critical of mining, which leads us to conclude that the Amendments were "based on the record." Thus, the District Council was not required to hold another joint public hearing on the Amendments.

The Mining Entities have more success with their second argument based on PGCC § 27-646(a)(3). This subsection dictates that "**[a]ll proposed amendments** shall be referred to the Planning Board for its written comments, which shall be submitted to the [District] Council prior to its action on the amendments." (Emphasis added.) The use of "shall" clearly imposes a mandate that any amendments—including those based on the

21

record—be sent back to the Planning Board. There is no evidence that the District Council complied with this mandate.

The District Council attempts to fend off these procedural challenges by the Mining Entities by pointing to LU § 21-104(b)(4), which provides that a master plan "may not be deemed void, inapplicable, or inoperative on the ground that the basis, content, or consideration of the plan or amendment is inconsistent with [the RDA]." But LU § 21-104(b)(4) only prohibits invalidations due to noncompliance with the RDA. It makes no mention of the PGCC—the basis for the Mining Entities' procedural challenge. LU § 21-104(b)(4) simply does not apply. We hold, therefore, that the District Council's failure to comply with PGCC § 27-646(a)(3) dictates that adoption of the Amendments be vacated.

The District Council, though, is absolutely right to point us to the Resolution's severability clause,[17] which permits unenforceable provisions of the Resolution to be invalidated without affecting the remaining provisions.[18] We have explained that a

---

[17] The severability provision states: "[T]he provisions of this Resolution are severable. If any provision, sentence, clause, section, or part thereof is held illegal, invalid, unconstitutional, or unenforceable, such illegality, invalidity, unconstitutionality, or unenforceability shall not affect or impair any of the remaining provisions, sentences, clauses, sections, or parts hereof or their application to persons, or circumstances. It is hereby declared to be the legislative intent that this Resolution would have been adopted as if such illegal, invalid, unconstitutional, or unenforceable provision, sentence, clause, section, or part had not been included therein."

[18] The Mining Entities argue that we should decline to address the severability argument because the District Council failed to raise it at the trial level and did not specifically identify the severable portions of the 2013 Master Plan. We reject the Mining Entities' contentions. First, a review of the record reveals that the District Council raised the severability argument in its trial court brief. Second, the severable portions are the Amendments the Mining Entities are challenging as procedurally deficient.

22

severability clause only raises the presumption of severability. *Anne Arundel Cty. v. Moushabek*, 269 Md. 419, 428 (1973) (citation omitted). If legislation contains such a clause, then the court must ask: "[W]ould the legislative body have enacted the statute or ordinance if it knew that part of the enactment was invalid?" *Id.* (citation omitted). We find this to be true of the 2013 Master Plan. The 2013 Master Plan is about 200 pages long and addresses multiple aspects of land use and development in Subregion 5—not just surface mining. It is the result of years of study and public comment. The Amendments, by contrast, are approximately three pages long, and two of the three affect surface mining. Additionally, the District Council held the required public hearing on the original 2013 Master Plan without the challenged Amendments. Finally, without the Amendments, the 2013 Master Plan would still carry out the District Council's intent to update the Subregion 5 Master Plan to implement the recommendations of the 2002 General Plan.

For these reasons, we conclude that the Amendments are severable from the 2013 Master Plan, and its remaining portions still stand.

### Preemption

Although not essential to our holding, we exercise our discretion to address the preemption issue that has been fully briefed here and below, as it may avoid the expense and delay of another appeal. Md. Rule 8-131(a). The Mining Entities aver that the SMA so extensively regulates surface mining that the General Assembly must have intended for the State to occupy the entire field, and we therefore should invalidate the Amendments. We agree that the General Assembly intended to vest permitting authority for surface

23

mining solely with the State, but we do not read the SMA to preempt local zoning and planning authority.

In Maryland, "State law may preempt local law in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption." *Md. Reclamation Assocs., Inc. v. Harford Cty.* (*MRA IV*), 414 Md. 1, 36 (2010) (citation omitted). The Mining Entities rely on the third category.[19] Implied preemption occurs when a local law "deals with an area in which the State Legislature has acted with such force that an intent by the State to occupy the entire field must be implied." *Talbot Cty. v. Skipper*, 329 Md. 481, 488 (1993) (alterations and citation omitted). We have repeatedly stated that the "primary indicia of a legislative purpose to pre-empt an entire field of law is the comprehensiveness with which the General Assembly has legislated the field." *Allied Vending, Inc. v. City of Bowie*, 332 Md. 279, 299 (1993) (quoting *Skipper*, 329 Md. at 488); *see also Ad + Soil, Inc. v. Cty. Comm'rs of Queen Anne's Cty.*, 307 Md. 307, 328 (1986).

---

[19] The Mining Entities also argue that the Amendments are preempted by conflict with the SMA. They contend that the Amendments are contrary to the SMA's regulatory approach, and, therefore, frustrate the purpose of the SMA. Conflict preemption occurs when a local law "prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law." *Talbot Cty. v. Skipper*, 329 Md. 481, 487 n.4 (1993) (listing cases). Maryland has not recognized frustration of purpose-type conflict preemption. Indeed, in *Worton Creek Marina, LLC v. Claggett*, 381 Md. 499 (2004), we expressly disavowed the Court of Special Appeals' application of federal "frustration of purpose" preemption to a local property use ordinance. *Id.* at 517. We rejected the application of this doctrine because our appellate courts had never applied it to resolve a conflict between state and local law. *Id.* at 516. We see no reason to depart from our conclusion in *Worton*, and therefore decline to apply frustration of purpose conflict preemption in this case.

Two state laws are at play here: the RDA and the SMA. As discussed above, the RDA governs zoning and planning in the Regional District, which includes the majority of Prince George's and Montgomery Counties. The RDA designated both counties' District Councils and delegated to them local zoning and planning authority, which may be exercised through the adoption or amendment of zoning laws or maps. LU §§ 22-101, 22-104(a)(1), (2); *Zimmer*, 444 Md. at 523–24 n.29. This authority includes the ability to regulate land use for "trade," "industry," or "residential purposes," as well as "surface, subsurface, and air rights for the land" used for those purposes. LU § 22-104(b)(5)(i)–(iii), (vii), (b)(6).

The SMA, enacted in 1975, granted the MDE authority to issue surface mining permits and dictates certain criteria for permit applications. EN §§ 15-801 through 15-834; 1975 Md. Laws ch. 581. Pursuant to its authority under the SMA, the MDE promulgated regulations establishing reclamation plan requirements for permit applications. COMAR 26.21.01.09–.20 (2010). The Mining Entities read the SMA's permitting scheme to be so "all-encompassing" as to preempt the District Council's zoning and planning authority.

We recently faced a similar preemption question regarding whether a county could place restrictions on rubble landfills through a zoning ordinance. In *MRA IV*, a company that wanted to construct a rubble landfill challenged a zoning ordinance that restricted the size of such landfills. 414 Md. at 8–9, 11. It argued that the State's rubble landfill permitting authority preempted zoning ordinances that would preclude operation under a State-issued permit. *Id.* at 38. We rejected this argument, concluding that when the county council enacted the zoning ordinance "[i]t did so for classic zoning considerations" and not

25

"criteria falling within the bailiwick of MDE." *Id.* at 40. We found support for our conclusion in Maryland Code (1982, 2007 Repl. Vol., 2008 Cum. Supp.), EN § 9-210(a)(3)(i), which stated that "'the [MDE] Secretary may not issue a permit to install' a waste disposal system unless that system '[m]eets all applicable county zoning and land use requirements.'" *Id.* (alterations in original).

The Mining Entities attempt to distinguish *MRA IV*, arguing that local governments have traditionally had some control over solid waste disposal, but that this is not true of surface mining. They point to two provisions of the SMA to support their argument that the SMA is so comprehensive that it impliedly preempts the Amendments—EN §§ 15-802(b) and 15-834(c). We do not read these provisions to have the preemptive intent the Mining Entities would imbue them with. Section 15-802(b) merely states that the SMA is "an exercise of the police powers of the State . . . [to] provid[e] for the protection and conservation of the natural resources of the State," including reclamation of surface mining areas. It does not vest the State with sole authority to regulate surface mining. Section 15-834(c) exempts counties from SMA provisions "regulating surface mining, reclamation and revegetation procedures" if their laws are "as restrictive as" the SMA. The Mining Entities argue that because the MDE has not made this determination for Prince George's County, the State has not delegated its regulatory authority to the District Council. But our preemption analysis is not confined to whether the State has delegated its regulatory authority to a locality. Rather, this provision makes clear that the General Assembly contemplated not only local planning and zoning restrictions on surface mining, but, in certain instances, local regulation of surface mining. When a statute expressly allows the

State to defer to a locality's regulatory determinations, the General Assembly could not have "acted with such force that an intent by the State to occupy the entire field must be implied." *Skipper*, 329 Md. at 488.

Other provisions in the SMA also show that the General Assembly did not intend it to supplant local zoning and planning authority. The SMA grants the MDE the authority to issue surface mining permits, but EN § 15-810(a) requires the MDE to process an applicant's permit "concurrently with any local or county land use and zoning reviews." Like the statute at issue in *MRA IV*, the SMA provides that the MDE "may not issue [a] permit until the appropriate county has . . . [p]rovided [the MDE] with a written statement that states that the proposed land use conforms with all applicable county zoning and land use requirements." *Compare* EN § 15-810(c)(2), *with* EN § 9-210(a)(3)(i). As Judge Andrea M. Leahy recognized, "There is no reasonable way to construe these provisions of the Maryland Code as doing anything other than complementing local government's role in planning and zoning." *Chaney*, 2016 WL 4698144, at *13 (quoting *MRA IV*, 414 Md. at 40).

The Mining Entities rely on *East Star, LLC v. County Commissioners of Queen Anne's County*, 203 Md. App. 477 (2012*)*, in support of their argument that the Amendments are preempted by the SMA. We are not persuaded. In *East Star*, the Court of Special Appeals held that a local zoning ordinance restricting the operation of "major extraction operations" to a duration of five years and requiring reclamation before an operation could expand was preempted by the SMA. *Id.* at 481, 493, 494. The court distinguished *MRA IV*, reasoning that the restrictions on these operations, especially the

27

reclamation provisions, were "not traditional areas of regulation controlled by local government," and were therefore preempted by implication. *Id.* at 493. Unlike the ordinance at issue in *East Star*, the disputed Amendments in this case cannot be read as seeking to regulate the permitting of surface mines. Indeed, apart from the prohibition on surface mining in the Developing Tier—clearly a zoning matter[20]—their language is equivocal and does not impose any concrete obligations on mining operations. For example, one of the Amendments would "[r]equire mining entities to achieve post[-]mining reclamation that meets environmental needs," but does not define environmental needs.[21] The Amendments address "classic zoning considerations[, such as] the impact of the use on neighboring properties due to emissions from the site, increase in noise, increase in traffic, danger to children, impairment of landscape and visual concerns, etc." that are within the purview of local zoning authorities. *MRA IV*, 414 Md. at 40.

We agree with Judge Leahy that "it cannot be that the Council—and by extension, the citizens of Prince George's County—are powerless to restrict surface mining in those areas of the County where surface mining is no longer a safe and viable activity." *Chaney*,

---

[20] Preliminary 2009 Subregion 5 Master Plan described the Developing Tier as consisting of "established neighborhoods and shopping areas, schools, libraries, employment areas, and a hospital center. It is where most of the Subregion 5 population will continue to reside and to work." Clearly, surface mining in these locales would be a concern to zoning authorities and well within their scope of authority.

[21] The Amendments also "require[e] applicants to mitigate on[-] and off-site transportation impacts from mining activities and potentially limit[ ] the daily hours of mining activities and duration of sand and gravel approvals to mitigate the nuisance to nearby communities." Unlike *East Star, LLC v. County Commissioners of Queen Anne's County*, 203 Md. App. 477 (2012*)*, they do not place any restrictions on permit duration or require reclamation to be completed before a mining operation can expand.

28

2016 WL 4698144, at *14. We hold that the SMA does not preempt local zoning and planning authority—at least to the extent of prohibiting surface mining in the Developing Tier (except for any vested rights).[22] If we were to conclude otherwise, we "would be reading an over-broad preemptive intent into an otherwise clear statutory scheme." *MRA IV*, 414 Md. at 40.

### CONCLUSION

The District Council failed to follow its own procedure for adopting amendments to 2013 Master Plan, and, therefore, they are invalid. Because the Amendments are severable, however, we uphold the remaining portions of the 2013 Master Plan. Additionally, Maryland's Surface Mining Act does not preempt the 2013 Master Plan Amendments, at least to the extent that the Amendments prohibit surface mining in the Developing Tier of Subregion 5. Accordingly, we affirm the judgment of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE EVENLY DIVIDED BETWEEN PETITIONER AND RESPONDENTS.**

---

[22] Like the Court of Special Appeals, we do not reach the question of whether distinct parts of the Resolution may conflict with the SMA. As our intermediate appellate court suggests, such analysis might include "whether the provision that would have required surface mining operators to mitigate certain on-site transportation impacts as part of the special exception application process would have conflicted with the [SMA]." *Chaney*, 2016 WL 4698144, at *14.